# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

AMERICAN CUSTOMER
SATISFACTION INDEX, LLC,

     *Plaintiff,*

v.

FORESEE RESULTS, INC., a Michigan
corporation,

     *Defendant*.

Case No. 2:18-cv-13319-GAD-MKM

Hon. Gershwin A. Drain

Magistrate Judge Mona K. Majzoub

## FORESEE RESULTS, INC.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED



Defendant Foresee Results, Inc. ("ForeSee") respectfully moves to dismiss Plaintiff American Customer Satisfaction Index, LLC's ("ACSI") claims of federal and common law trademark infringement in Counts I and IV, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. ACSI licenses the trademarks it seeks to enforce in this action—ACSI and ACSI and design ("the ACSI Marks")—from the registered owner, the University of Michigan ("Michigan"). In a recent decision, however, this Court (Leitman, J.) held that Plaintiff ACSI is merely a non-exclusive licensee of the ACSI Marks and, therefore, does not have authority under the Lanham Act to enforce the rights held by Michigan in the ACSI Marks. ACSI is collaterally estopped from taking action contrary to Judge Leitman's ruling and, consequently, its claims of trademark infringement in Counts I and IV are barred as a matter of law.  Further, to the extent ACSI's unfair competition claims in Counts II, IV, and V are based on trademark infringement, they are also barred.

ForeSee also respectfully moves to dismiss Count III for violation of Mich. Comp. Laws §429.42, pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim upon which relief can be granted. ACSI again alleges in Count III that ForeSee has infringed ACSI's rights in the ACSI Marks. Mich. Comp. Laws §429.42, however, only confers enforcement rights on parties that hold a trademark registration with the State of Michigan. ACSI has not alleged that it, in fact, owns (or has enforceable rights in) trademark registrations with the State of Michigan for the ACSI Marks. Plaintiff ACSI, therefore, lacks standing to assert a claim under Mich. Comp. Laws §429.42.



The detailed factual and legal bases for this motion are provided in the accompanying Brief in Support.

Pursuant to Local Rule 7.1(a), on December 14, 2018, there was a conference between attorneys for the parties in which ForeSee's counsel explained the nature of the motion and its legal bases. Plaintiff ACSI's counsel did not concur in the relief sought.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated: <u>December 18, 2018</u>

<u>/s/ Chanille Carswell</u>
Chanille Carswell (P53754)
Christopher C. Smith (P73936)
Anita C. Marinelli (P81986)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email: ccarswell@brookskushman.com
          csmith@brookskushman.com
          amarinelli@brookskushman.com

*Attorneys for Defendant*



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

AMERICAN CUSTOMER
SATISFACTION INDEX, LLC,

      *Plaintiff,*

v.

FORESEE RESULTS, INC., a Michigan
corporation,

      *Defendant*.

Case No. 2:18-cv-13319-GAD-MKM

Hon. Gershwin A. Drain

Magistrate Judge Mona K. Majzoub

## BRIEF IN SUPPORT OF MOTION



# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

ISSUES PRESENTED ........................................................................ v

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
AUTHORITY FOR THE RELIEF SOUGHT ............................... vi

I.    INTRODUCTION ...................................................................... 1

II.   FACTUAL BACKGROUND ........................................................ 2

III.  ARGUMENT ............................................................................ 6

    A.   Legal Standard ................................................................. 6

    B.   ACSI's Federal Claims of Trademark Infringement are Barred
        by Collateral Estoppel ....................................................... 7

    C.   ASCI's Related Claims of Trademark Infringement are also
        Barred ............................................................................... 10

    D.   ACSI Lacks Standing to Bring Its Claim of Federal or Common
        Law Trademark Infringement ............................................. 11

        1.   ACSI is not the Registrant or Owner of the ACSI Marks ....... 11

        2.   The License Agreement does not Confer Standing to
           ACSI ........................................................................ 12

           a.   ACSI is not an Exclusive Licensee ............................... 12

           b.   The License Agreement is not "tantamount to an
               assignment" ................................................................... 13

               i.   ACSI lacks the power to exclude Michigan
                    from using the ACSI Marks ................................. 15

               ii.   Michigan retains ownership and benefits of
                    the ACSI Marks ..................................................... 15



       iii.   ACSI's Rights in the ACSI Marks are geographically co-extensive with those of Michigan and the existing licensees .................... 17

       iv.   Michigan reserves the right to monitor ACSI's use of the ACSI Marks and that of ACSI's licensees ................................................. 17

       v.   The License Agreement Contains Numerous Provisions that are Inconsistent with an Assignment ........................................................ 18

       vi.   The License Agreement limits ACSI's ability to enforce the ACSI Marks against Infringers ........................................................... 20

   E.   ACSI's lack of standing cannot be cured by joining Michigan .......... 21

   F.   ACSI does not have a Michigan Registration to Assert a Claim Under Mich. Comp. Laws § 429.42 ................................................. 21

IV.   CONCLUSION ............................................................................. 22



ii

# TABLE OF AUTHORITIES

## Cases

*Andretti v. Borla Performance Indus.*,
    426 F.3d 824 (6th Cir. 2005) ...................................................................21

*Armada Oil & Gas Co., Inc. v. Eppco, Inc.*,
    2007 U.S. Dist. LEXIS 68280 (E.D. Mich. Sept. 17, 2017) ........................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................6

*Carson v. Here's Johnny Portable Toilets, Inc.*,
    698 F.2d 831 (6th Cir. 1983) ......................................................................10

*Clearing Niagara, Inc. v. Midwest Brake Bond Co.*,
    339 F. Supp. 2d 944 (W.D. Mich. 2004)......................................................11

*Cobbins v. Tenn. DOT*,
    566 F.3d 582 (6th Cir. 2009) ........................................................................7

*Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*,
    508 F.3d 327 (6th Cir.2007) .........................................................................7

*Ford Motor Company v. Thermoanalytics, Inc.*,
    2016 U.S. Dist. LEXIS 11955 (E.D. Mich. Feb. 2, 2016) ...........................16

*Goulas v. Maxmo, Inc.*,
    2014 U.S. Dist. LEXIS 75871 (E.D. Mich. June 4, 2014) ...........................10

*Greenberg v. Life Ins. Co. of Va.*,
    177 F.3d 507 (6th Cir.1999) .........................................................................7

*Grendell v. Ohio Supreme Court*,
    252 F.3d 828 (6th Cir. 2001) ......................................................................11

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir 2009) .........................................................................7



*ICEE Distribs., Inc. v. J&J Snack Foods Corp.*,
    325 F.3d 586 (5th Cir. 2003) ........................................................14

*Leisure Sys. Inc. v. Roundup, LLC*,
    2011 WL 13157181 (S.D. Ohio Oct. 14, 2011) ..................................... 14, 15

*National Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*,
    361 F.Supp.2d 1244 (E.D. Wash. 2004).......................................21

*Preferred Care of Del., Inc. v. Crocker*,
    2017 U.S. App. LEXIS 14215 (6th Cir. Feb. 28, 2017).................................9

*Profusion Industries, LLC v. Chem-Tek Sys.*,
    2016 U.S. Dist. LEXIS 170670 (N.D. Ohio Dec. 9, 2016) ..........................12

*Propat Int'l Corp. v. Rpost, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007) ...................................................18

*Quabaug Rubber Co. v. Fabiano Shoe Co.*,
    567 F.2d 154 (1st Cir. 1977)........................................... 10, 12, 14

*Scherer v. JP Morgan Chase & Co.*,
    508 F. App'x 429 (6th Cir. Dec.11, 2012) .........................................7

*Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists*,
    905 F.3d 421 (6th Cir. 2018) .....................................................9

*Yellowbook Inc. v. Brandeberry*,
    708 F.3d 837 (6th Cir. 2013) ....................................................16

## Statutes

15 U.S.C. § 1114 ................................................................ 8, 10, 11

## Other Authorities

*McCarthy on Trademarks and Unfair Competition* (5th. ed.) § 32:3......................11
*McCarthy on Trademarks and Unfair Competition* (5th. ed.) § 18:44.50...............12

## Rules

Fed. R. Civ. P. 12 ............................................................ 1, 2, 8, 22



## ISSUES PRESENTED

1.    Whether Plaintiff is collaterally estopped from asserting its federal and common law claims of trademark infringement in Counts I and IV due to a prior ruling by this Court that Plaintiff lacks standing as a non-exclusive licensee to enforce the ACSI Marks?

    a.  ForeSee's Answer: Yes

2.    Whether Plaintiff's federal and common law unfair competition claims are also barred as a matter of law to the extent they are based on alleged infringement of the ACSI Marks that ACSI lacks standing to enforce?

    a.  ForeSee's Answer: Yes

3.    Whether Plaintiff lacks standing to assert a trademark infringement claim pursuant to Mich. Comp. Laws §429.42 given that Plaintiff has not alleged that it owns (or has enforceable rights in) trademark registrations with the State of Michigan for the ACSI Marks?

    a.  ForeSee's Answer: Yes



## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Lanham Act, 15 U.S.C. § 1114(1)

*Andretti v. Borla Performance Indus.*, 426 F.3d 824 (6th Cir. 2005).

*Armada Oil & Gas Co., Inc. v. Eppco, Inc.*, 2007 WL 2713738 (E.D. Mich. Sept. 17, 2017),

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944 (W.D. Mich. 2004)

*Cobbins v. Tenn. DOT*, 566 F.3d 582 (6th Cir. 2009)

*Leisure Sys. Inc. v. Roundup, LLC*, 2011 WL 13157181 (S.D. Ohio Oct. 14, 2011)

*Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154 (1st Cir. 1977)



# I.    INTRODUCTION

In this suit, Plaintiff American Customer Satisfaction Index, LLC ("ACSI") accuses Defendant Foresee Results, Inc. ("ForeSee") of infringing the ACSI and ACSI and design trademarks ("the ACSI Marks") ACSI licenses from the University of Michigan ("Michigan"). However, just seven months ago, the Hon. J. Leitman, from **this District**, held that ***ACSI does not have standing as a non-exclusive licensee to enforce the ACSI Marks***. *See* Declaration of Christopher C. Smith ("Smith Decl.") at ¶5, Ex. 3, (*American Customer Satisfaction Index, LLC v. Genesys Telecommunications Laboratories, Inc., et al.*, Case No. 17-cv-12554, Dkt. No. 45. ("Genesys Litigation").)  Based on that decision, the Court dismissed ACSI's trademark claims and Michigan was substituted as a party in place of ACSI. To date, ACSI has not appealed nor moved to reconsider that decision. Judge Leitman's ruling remains undisturbed and binding on ACSI.

Rather than challenge Judge Leitman's standing decision through a motion for reconsideration or in an appeal, ACSI instead filed this suit stating (via counsel) that it disagrees with Judge Leitman's ruling and seeks to "test" it through this action. (Smith Decl., ¶7, Ex. 5.) Such "testing" is highly improper. Until Judge Leitman's ruling is withdrawn or reversed, Plaintiff is bound by it and collaterally estopped from taking action contrary to it. And even if ACSI was not bound by Judge Leitman's ruling, ACSI lacks standing to enforce the ACSI Marks for all the reasons stated by Judge Leitman. Therefore, ACSI's claims of federal and common law trademark infringement (Counts I and IV), as well as ACSI's claims of unfair



1

competition to the extent they are based on alleged infringement of the ACSI Marks (Counts II, IV and V), are barred and should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Additionally, ACSI alleges trademark infringement under Mich. Comp. Laws §429.42 (Count III), which provides for the enforcement of trademarks registered with the State of Michigan. ACSI, however, has not alleged that it has (or has an enforceable license in) trademark registrations in the State of Michigan for the ACSI Marks. Therefore, Count III should also be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    FACTUAL BACKGROUND

In 1997, the United States Patent and Trademark Office issued federal registrations to Michigan for the trademarks ACSI and ACSI and design (the "ACSI Marks"), in Class 35 for "business and market research and analysis services, namely, the research and periodic measurement, publication and distribution to others of customer evaluation of the quality of goods and services purchased in the United States in major industry sectors." (*See* Dkt. 1, U.S. Reg. Nos. 2122772 and 2122752 at Exs. A and B.)  Michigan also owned Plaintiff ACSI until 2008 when ACSI spun off as a private entity. (*Id.* at ¶29.) Michigan then granted ACSI a license to use and sublicense the ACSI Marks.[1] (Smith Decl. at ¶ 3, Ex. 1 at Preamble.)

---

[1] The License Agreement is attached as Exhibit 1 to the Smith Decl. (hereafter, the "License Agreement"). The Court may appropriately consider the License Agreement because it is referenced in and central to the Complaint.  *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (explaining that exhibits attached to motion may be considered "so long as they are referred to in the



ACSI alleges it is the "exclusive licensee" of the ACSI Marks under the License Agreement.  (Dkt. 1 at ¶¶ 30-31.)   ACSI further alleges it has "all rights and responsibilities for policing and enforcement of trademark rights in its name and protected ACSI marks and name."  (*Id.* at ¶ 30.)

ACSI made the same claims in a different litigation in this Court before Judge Leitman ("Genesys Litigation") in support of its claims that the defendants infringed the ACSI Marks. (Smith Decl, at ¶6, Ex. 4 at ¶¶29, 30.) After review of ACSI's pleadings and the License Agreement,  Judge Leitman granted Genesys' motion to dismiss ACSI's claims of trademark infringement ruling that ACSI *does not* have standing to sue on the ACSI Marks because: (1) ACSI does not own the ACSI Marks, and (2) even if an exclusive licensee had standing to sue, ACSI is not an exclusive licensee of the ACSI Marks. (*Id*. at ¶4, Ex. 2, Hearing Transcript at pp. 49, 52.)

Judge Leitman explained that under the Lanham Act only the "registrant" of a trademark has standing to bring an infringement claim, and that an "exclusive licensee" is not included in the definition of "registrant":

> I'm guided by the plain language of the statute that says that an infringer shall be liable in a civil action brought by the registrant. From that, ***I conclude that only a registrant has standing to bring an infringement claim and the term registrant, as relevant here, includes legal representatives, predecessors, successors and assigns***.
>
> And as the Second Circuit indicated in the *Federal Treasury* case and as Professor McCarthy confirmed, the majority view is that the statute means what it literally says, that those are the sole categories of entities that have standing to bring a claim as a registrant, and that ***because the***

---

complaint and are central to the claims contained therein, without converting the motion to one for summary judgment") (citation omitted).



> **term registrant is not defined to include an exclusive licensee, then
> exclusive licensee [sic] does not have standing to – simply by virtue of
> that status, does not have standing to bring an infringement claim
> under the Lanham Act**.

(*Id.* at 49, emphasis added). Moreover, Judge Leitman held that ACSI, in fact, *is not*
an exclusive licensee:

> Even if an exclusive licensee could conceivably have standing to bring
> an infringement claim, ***my view is … that the license agreement here
> is not an exclusive license***. It is subject to both existing licenses and a
> license that is to be negotiated.

(*Id.*, emphasis added.) Indeed, the terms of the License Agreement are inconsistent
with ACSI's claim that it is an exclusive licensee, given that Michigan retains
substantial rights to the ACSI Marks and the License Agreement imposes significant
restrictions upon ACSI, including the following:

a)   Michigan retains a royalty-free, irrevocable license to use the ACSI
     Marks.  (Smith Decl. at ¶ 3, Ex. 1 at § 2.5);

b)   The License Agreement states ACSI's use of the ACSI Marks inures to
     the benefit of Michigan.  (*Id.* at § 2.6);

c)   ACSI is prohibited from doing anything that will be a derogation of any
     of Michigan's rights to the ACSI Marks either during the term of the
     agreement or after (such as abandoning the marks).  (*Id.* at § 7.2);

d)   ACSI is prohibited from assigning the license agreement or any rights
     under the agreement without Michigan's consent.  (*Id.* at § 14.11);

e)   ACSI is prohibited from settling any infringement suits under the ACSI
     Marks without Michigan's consent.  (*Id.* at § 8.1);



4

f)    When Michigan elects to bring an infringement action, it has full authority to settle without ACSI's consent (*Id.* at § 8.3);

g)    When Michigan elects to bring an infringement action, ACSI is stripped of all sublicensing rights during the pendency of any such action. (*Id.* at 8.3);

h)    ACSI must notify Michigan thirty days before filing any suit for infringement (*Id.* at § 8.1);

i)    ACSI's license is explicitly subject to seven "existing licenses" to the ACSI Marks and related software, including a future license to be issued by Michigan after ACSI obtained its license. (*Id.* at Preamble, § 1.1);

j)    ACSI is prohibited from interfering with any third-party's use of the ACSI Marks under an "existing license," nor can ACSI impose any restrictions on such third-party's that are more restrictive than those contained in the existing licenses. (*Id.* at § 2.2);

k)    Trademark notices for ACSI's own products distributed in connection with the ACSI Marks are to be consistent with "any instructions which might be provided by Michigan." (*Id.* at § 14.5);

l)    All sublicensees of ACSI are required to allow Michigan access to the sublicensees' records for auditing. (*Id.* at § 4.3); and

m)    Upon termination of ACSI's license, all sublicensees of ACSI also terminate. (*Id.* at § 6.3.)

Unsatisfied with the result in the Genesys Litigation, ACSI filed this Complaint against ForeSee raising the same claims and relying on the same License



Agreement Judge Leitman held does not confer standing. (Dkt. 1, at ¶¶30-31.) ACSI's counsel confirmed that there has been no change in ACSI's License Agreement with Michigan, but that ACSI seeks to "test" Judge Leitman's ruling in this action. (Smith Decl., at ¶7, Ex 5, 11/30/18 email.)  It is axiomatic that the doctrine of collateral estoppel prohibits a party from "testing" a binding ruling by one court, by simply asserting the same claims before a different court.

Because ACSI's license with Michigan has not changed in any way since Judge Leitman's ruling, and Judge Leitman's ruling has not been reversed or withdrawn, ACSI is barred from enforcing the ACSI Marks. Therefore, the Court should grant ForeSee's motion to dismiss ACSI's claims of federal and common law trademark infringement (Counts I and IV), as well as all other claims ACSI asserts that are based on alleged infringement of the ACSI Marks (Counts II, IV and V). And because ACSI does not allege that it owns a registration (or has enforceable rights in a state registration via license) in the State of Michigan for the ACSI Marks, ForeSee further asks that the Court dismiss ACSI's claim in Count III for trademark infringement under Mich. Comp. Laws §429.42.

## III.   ARGUMENT

### A.   Legal Standard

Rule 12(b)(6) motions test the sufficiency of a complaint. To survive a 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of all the elements of a cause of action, supported



by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, more is required than "a sheer possibility that a defendant has acted unlawfully." *Id*. The complaint must contain sufficient factual matter, taken as true, to state a claim for relief that is plausible on its face. *Id*. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. The foregoing standards apply to cases alleging actual or potential infringement of trademarks. *See Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir 2009).

Collateral estoppel is properly raised in a Rule 12(b)(6) motion to dismiss. *See e.g. Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 434 (6th Cir. Dec.11, 2012). And "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co*., 508 F.3d 327, 335 (6th Cir.2007). "A court may also consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id*. at 336. In addition, documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Va*., 177 F.3d 507, 514 (6th Cir.1999).

## B.   ACSI's Federal Claims of Trademark Infringement are Barred by Collateral Estoppel

"Issue preclusion, or collateral estoppel, bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tenn. DOT*,



566 F.3d 582, 589 (6th Cir. 2009) "Four requirements must be met before issue preclusion applies: (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* at 589-90.

All four requirements are met in this case. ***First***, ACSI's lack of standing to assert trademark infringement was already litigated in the Genesys Litigation. In that case, ACSI filed a trademark infringement lawsuit against Genesys Telecommunications Laboratories Inc. alleging infringement of the ACSI Marks. (Smith Decl., ¶6, Ex. 4.)  Once the License Agreement was produced, Genesys filed a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings requesting dismissal of ACSI's claim regarding trademark infringement under 15 U.S.C. § 1114 for lack of standing. (*Genesys Litigation*, Dkt No. 32.) ACSI opposed the motion and responded. (*Genesys Litigation,* Dkt. No. 38.) The Court conducted a hearing and ultimately granted Genesys' motion finding ACSI lacked standing to enforce the ACSI Marks. (*See* Smith Decl., ¶4, Ex. 2 at p. 49; *Id*. ¶5, Ex. 3.)

***Second***, ASCI's lack of standing was necessary to dismissal of the trademark infringement claims in the Genesys Litigation. The court in the Genesys Litigation dismissed Count I because ASCI "does not have statutory standing to bring a claim for infringement under the Lanham Act." (*Id*. ¶4, Ex. 2 at p. 52; *Id.* ¶5, Ex. 3.)  The



8

issue of standing was the Court's sole basis for finding in Genesys' favor on the claim of trademark infringement.

**Third**, the Court's grant of judgment on the pleadings was a final judgment on the merits. For purposes of issue preclusion, "a court's decision may remain sufficiently firm to be given preclusive effect" even when there is no judgment. *Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists*, 905 F.3d 421, 427 (6th Cir. 2018). A "final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Preferred Care of Del., Inc. v. Crocker*, 2017 U.S. App. LEXIS 14215, at *5-6 (6th Cir. Feb. 28, 2017) (quoting Restatement (Second) of Judgments § 13, cmt. g) (finding a court order to be a "final judgment for the purpose of issue preclusion because it was a definitive ruling on the issue of enforceability of an agreement"). Judge Leitman's order in the Genesys Litigation was a definitive ruling that ACSI lacks standing to assert infringement of the ACSI Marks.

**Fourth**, ACSI had a full and fair opportunity to litigate the standing issue previously. As stated above, ACSI and Genesys fully briefed the issue of standing and the Court held a hearing on the issue before ruling against ACSI.

Given that all the requirements for collateral estoppel are met, ACSI is barred from enforcing the ACSI Marks against ForeSee and, therefore, ACSI's claim of trademark infringement in Count I should be dismissed.



## C.    ASCI's Related Claims of Trademark Infringement are also Barred

In addition to its federal trademark infringement claim, ASCI alleges common law trademark infringement (Count IV) and federal and common law unfair competition (Counts II, IV and V). (Dkt. 1.)  Claims of federal and common law unfair competition and common law trademark infringement are assessed under the same standard as a federal claim of trademark infringement.  *See Carson v. Here's Johnny Portable Toilets, Inc*., 698 F.2d 831, 833 (6th Cir. 1983) (federal trademark infringement and unfair competition under Michigan law are governed under the same standard); *Goulas v. Maxmo, Inc.,* 2014 U.S. Dist. LEXIS 75871, at *9 (E.D. Mich. June 4, 2014) ("The Court undertakes the same analysis for the [federal] trademark infringement, unfair competition, [and] common law trademark infringement" claims.).

Judge Leitman's ruling that ACSI is not an exclusive licensee also bars ACSI from asserting trademark infringement under common law. *See Quabaug Rubber Co. v. Fabiano Shoe Co*., 567 F.2d 154, 160 (1st Cir. 1977) (citing Restatement of Torts, § 711) ("Quabaug is not a 'registrant' or an 'exclusive licensee' and does not have standing to assert federal statutory trademark infringement under the Lanham Act, 15 U.S.C. § 1114. ***Nor does it have standing to seek relief for common law trademark infringement, since only the owner of the trademark may do so***.) (emphasis added). And to the extent ACSI's claims of unfair competition are based alleged infringement of the ACSI Marks, they are also barred by Judge Leitman's



prior ruling. Therefore, ACSI's claims of trademark infringement in Counts II, IV and V should be dismissed.

## D. ACSI Lacks Standing to Bring Its Claim of Federal or Common Law Trademark Infringement

Even if the Court finds that ACSI is not collaterally estopped from asserting federal or common law trademark infringement, ACSI has not pled facts that establish standing to enforce the ACSI Marks.

### 1. ACSI is not the Registrant or Owner of the ACSI Marks

Standing is the "threshold question in every federal case." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). The Lanham Act only empowers the *registrant* of a trademark to enforce it. 15 U.S.C. § 1114(1) (Any person who, "without the consent of the registrant [infringes a registered trademark] … shall be liable in a civil action **by the registrant** for the remedies hereinafter provided.") (emphasis added); *see also Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 339 F. Supp. 2d 944, 958 (W.D. Mich. 2004) ("Nothing in the Lanham Act suggests that any person other than the registrant, in the case of a trademark infringement claim, or the owner, in the case of a dilution claim, has standing to seek relief for either violation."); *McCarthy on Trademarks and Unfair Competition* (5th. ed.) § 32:3, at 32-22 (claims for registered trademark infringement are available only to the registrant). ACSI admits that it is not the registrant or owner of the ACSI Marks. (*See* Dkt. 1 at ¶¶ 30-31.) Therefore, ACSI does not have standing to enforce the ACSI Marks as a "registrant."



11

### 2.    The License Agreement does not Confer Standing to ACSI

A minority of courts have recognized that, in limited circumstances, "an exclusive licensee's interest in the mark may be sufficient to confer standing." *Bliss*, 339 F.Supp.2d at 959.  For this exception to apply, "the exclusive license must be tantamount to an assignment where the licensee stands in the shoes of the trademark owner." *Profusion Industries, LLC v. Chem-Tek Sys.*, 2016 U.S. Dist. LEXIS 170670, *12 (N.D. Ohio Dec. 9, 2016).  Here, ACSI's license is not exclusive nor is the license tantamount to an assignment.

### a.    ACSI is not an Exclusive Licensee

The License Agreement does not confer exclusive licensee status onto ACSI. As described in *Bliss*, an exclusive license is one that, at a minimum, grants the licensee the exclusive right to use the trademarks. *Id.* at 959 (citing *Quabaug*, 567 F.2d at 159).  Indeed, "a truly exclusive licensee [is] one who has the right even to exclude his licensor from using the mark." *Id.* (quoting *Fin. Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 531-32 (7th Cir. 1998)); *see also McCarthy*, § 18:44.50 ("If the license is exclusive to a licensee, then the licensor's own use in conflict with the licensed use can be a breach of contract because it is inconsistent with the licensee's exclusive right to use.").

Even a cursory review of the License Agreement demonstrates that it does not grant ACSI exclusive rights to use the ACSI Marks.  Indeed, the first page of the License Agreement states that ACSI's license is "subject to" seven separate "existing licenses" that Michigan granted to third-parties.  (Smith Decl. at ¶ 3, Ex. 1 at Preamble, §§ 1.1, 2.2.)  One of those seven licensing agreements was a future



license that Michigan intended to grant to the Universidad Iberoamericana, A.C. (UIA), which was still "being negotiated" at the time ACSI obtained its license. (*Id.* at § 1.1.)  In other words, ACSI understood and agreed that its own rights in the marks would be "subject to" the rights of prior licensees and unknown rights of a future licensee of Michigan.  While the license to UIA has since terminated, the fact that the License Agreement was expressly "subject to" unknown rights of a future licensee indicates that Plaintiff's license was not intended to be exclusive.  The License Agreement also grants Michigan a "royalty-free, irrevocable license" to the ACSI Marks to promote "research performed at Michigan." (Smith Decl. at ¶ 3, Ex. 1 at § 2.5.)  That is, Michigan has an irrevocable license to use the ACSI Marks as it sees fit to promote its own research.

In sum, the License Agreement, on its face, reflects that both Michigan and multiple third-parties have rights in the ACSI Marks, which cannot be "interfered with" by ACSI. (*Id.* at § 2.2.)  Thus, the limited exception for standing of "exclusive licensees," as recognized in *Bliss*, does not apply here since ACSI is not an exclusive licensee.

### b.    The License Agreement is not "tantamount to an assignment"

Even if ACSI were an exclusive licensee of the ACSI Marks, ACSI still lacks sufficient additional rights required for the License Agreement to be tantamount to an assignment sufficient to grant ACSI standing.

"The rule is that a licensee will have standing only where the licensing agreement grants the licensee either a property interest in the trademark or rights



13

tantamount to an assignment." *Bliss*, 339 F.Supp.2d at 959.  A "licensee **has no standing where the license is non-exclusive or the license does not equate to an assignment**." *Id.* (citing *Quabaug*, 567 F.2d at 159, and *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598-99 (5th Cir. 2003) (emphasis added)).

Courts in the Sixth Circuit cite *Bliss* for a non-exclusive list of six factors "that tend to weigh against standing":  (1) the licensee lacks the power to exclude the licensor from using the mark in the licensee's territory; (2) the license provides that the licensor retains exclusive ownership of the mark; (3) the license imposes geographical restrictions on the licensee's use of the mark; (4) the licensing agreement requires the licensee to maintain the quality of the mark or reserves to the licensor the right to monitor the quality of the licensee's products; (5) the license contains duties and rights between the parties that are inconsistent with an assignment; and (6) the license limits the licensee's ability to enforce the mark against infringers.  *Bliss*, 339 F. Supp.2d at 959; *accord Armada Oil & Gas Co., Inc. v. Eppco, Inc.*, 2007 U.S. Dist. LEXIS 68280 (E.D. Mich. Sept. 17, 2017) (applying *Bliss* factors and holding that licensee's interests in the mark were not sufficient to grant it standing to bring trademark infringement claims); *Leisure Sys. Inc. v. Roundup, LLC*, 2011 WL 13157181, *9 (S.D. Ohio Oct. 14, 2011) (applying *Bliss* factors and holding that licensee lacked standing).

For example, in *Armada Oil*, this court found that the licensee lacked standing where the relevant license agreement "did not constitute a full assignment of [licensor's] trademarks to [licensee], did not grant [licensee] exclusive use of the



14

[licensor's] trademarks, and restricted [licensee's] ability to enforce the [licensor's] trademarks." 2007 U.S. Dist. LEXIS 68280, at *9.

Likewise, here, an analysis of the *Bliss* factors demonstrates that the License Agreement does not confer standing on ACSI:

### i.       ACSI lacks the power to exclude Michigan from using the ACSI Marks

As noted above, Michigan has an irrevocable license to use the ACSI Marks to promote its own research. (Smith Decl. at ¶ 3, Ex. 1 at § 2.5.) As such, ACSI lacks the power to exclude Michigan from using the marks, and this factor weighs against standing. *See Leisure* Systems, 2011 WL 13157181, at *7 (holding that first *Bliss* factor weighed against standing where license agreement could not "be construed to prevent Licensor from granting or utilizing any other licenses for the use" of the mark). ACSI does not have the right to exclude Michigan (nor the other licensed third-parties), and therefore does not have all rights and interest in the ACSI Marks.

### ii.      Michigan retains ownership and benefits of the ACSI Marks

Michigan remains the registered owner of the ACSI Marks. (Dkt. 1 at ¶¶ 30-31; Dkt. 1-1, 1-2.) The License Agreement is also replete with provisions manifesting Michigan's retention of substantially all of the benefits of the marks, including: a provision stating that ACSI's "use of the trademarks in connection with goods and services shall inure to the benefit of Michigan" (*Id.* at ¶ 3, Ex. 1 at § 2.6); provisions permitting Michigan's irrevocable use of the mark royalty-free (*Id.* at §



2.5); Michigan's oversight over the enforcement of the marks (*Id.* at §§ 8.1-8.3); ACSI's covenant "not to do any act … in derogation of any of the rights of Michigan in the Trademarks" (*Id.* at § 7.2); and Michigan's right to "immediately terminate" the License Agreement if ACSI asserts the invalidity or unenforceability of the marks.  (*Id.* at § 7.3.)

It is only logical that where a licensee's (like ACSI's) use inures to the benefit of the licensor-owner of the mark (like Michigan), "the licensee acquires no ownership rights in the mark itself." *Ford Motor Company v. Thermoanalytics, Inc.*, 2016 U.S. Dist. LEXIS 11955, at *9-10 (E.D. Mich. Feb. 2, 2016) (*quoting McCarthy*, § 18:52).  As all of ACSI's use of the ACSI Marks inures to the benefit of Michigan, the goodwill associated with the ACSI Marks also remains with Michigan.  This further indicates that Michigan retains ownership of the marks.  *See Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 844 (6th Cir. 2013) ("Assignment of a trademark without its associated goodwill is treated as an invalid 'assignment in gross' that gives the assignee no rights.")  Thus, under the License Agreement Michigan retains exclusive ownership of the marks and substantially all rights in and to the ACSI Marks.

Because Michigan retains exclusive ownership of the ACSI Marks, and ACSI's use of the ACSI Marks inures to the benefit of Michigan, this factor weighs against ACSI's standing.



16

### iii. ACSI's rights in the ACSI Marks are geographically co-extensive with those of Michigan and the existing licensees

The License Agreement provides that ACSI may use the marks "worldwide." As discussed above, however, ACSI's license is "subject to" the existing licenses and Michigan's rights to continue using the marks, and none of those third-party rights appear to be geographically restricted. Further, the License Agreement prohibits ACSI from imposing geographical restrictions on any of the existing third-party licensees of the mark. (Smith Decl. at ¶ 3, Ex. 1 at § 2.2.) Thus, this factor appears to be neutral for purposes of analyzing ACSI's standing.

### iv. Michigan reserves the right to monitor ACSI's use of the ACSI Marks and that of ACSI's licensees

Under the License Agreement, ACSI must establish standards and specifications for use of the marks, but Michigan requires prompt notification of "any changes for modifications to those standards." (Smith Decl. at ¶ 3, Ex. 1 at § 5.2.) Further, Michigan retains control over ACSI's sublicensing of the marks, including requirements that: (1) ACSI obtain the "express prior written permission of Michigan" to sublicense the marks for anything other than cash payments, and (2) any sublicense must include a provision allowing the assignment of all rights to Michigan. (*Id.* at §§ 6.1-6.5.) In addition, all sublicensees of ACSI are required to allow Michigan access to the sublicensees' records for auditing purposes. (*Id.* at § 4.3.) This factor weighs against ACSI's standing to assert trademark infringement claims.



17

### v. The License Agreement contains numerous provisions that are inconsistent with an assignment

Many provisions of the License Agreement set forth duties and rights between the parties that are inconsistent with an assignment. First, as described above, the License Agreement is explicitly "subject to" existing licenses Michigan previously issued to third-parties, and ACSI is prohibited from "interfering with" the rights granted in the existing licenses. An assignee, on the other hand, would not be so restricted.

Second, unlike an assignee, ACSI is not permitted to further assign its interests in the marks without the prior written consent of Michigan. (Smith Decl. at ¶ 3, Ex. 1 at § 14.11.) *See Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) (finding that in the similar context of patent assignments, "[t]he **right to dispose of an asset is an important incident of ownership**, and such a restriction on that right is a strong indicator that the agreement does not grant [the licensee] all substantial rights under the patent.") (emphasis added).

Third, the License Agreement prohibits ACSI from doing anything "in derogation of any of the rights of Michigan in the trademarks either during the term of this Agreement or thereafter." (Smith Decl. at ¶ 3, Ex. 1 at § 7.2.) And the License Agreement requires ACSI to maintain the registrations for the ACSI Marks. (*Id.* at § 7.1.) Thus, ACSI cannot abandon the ACSI Marks (which would be a derogation of Michigan's rights), further demonstrating that ACSI's rights are inconsistent with an assignment.



18

Fourth, as noted above, ACSI's use of the ACSI Marks inures to the benefit of Michigan, and as such, the goodwill associated with the ACSI Marks still belongs with Michigan.

Fifth, the License Agreement provides that trademark notices for ACSI's own products distributed in connection with the ACSI Marks are to be consistent with "any instructions which might be provided by Michigan." (*Id.* at § 14.5.)

Sixth, in certain circumstances, Michigan retains the right to veto ACSI's ability to grant sublicenses to the ACSI Marks. (*Id.* at § 8.3.) That is, if ACSI fails to take action to abate allegations of infringement against third-parties raised by Michigan, then Michigan has the right to take such action, and "[d]uring such action licensee shall not have the right to grant sublicenses without Michigan's permission." (*Id.*)

Seventh, the License Agreement limits ACSI's ability to place restrictions on the existing license agreements and cannot interfere with any third-party's use of the trademarks as authorized by an existing license and will not seek to impose any restrictions on such third-party that are more restrictive than those contained in the existing license authorizing such party's use of the trademarks." (*Id.* at § 2.2.) As such, ACSI has no authority to create new restrictions on the existing licensees' use of the trademarks.

Eighth, upon termination of the License Agreement, all sublicensees of ACSI also terminate. (*Id.* at § 6.3.) Conversely, a true assignee of a trademark would not be subject to such sublicensing restrictions.



19

### vi.   The License Agreement limits ACSI's ability to enforce the ACSI Marks against Infringers

Michigan retains important rights regarding the enforcement of the ACSI Marks.  Under the License Agreement, ACSI is prohibited from filing "any suit" without giving Michigan at least 30 days' notice and verifying its "diligent investigation of the merits of such suit."  (Smith Decl. at ¶ 3, Ex. 1 at § 8.1.)  The License Agreement further prohibits ACSI from settling any infringement lawsuit without first obtaining the "advice and consent of Michigan."  (*Id.*)  Conversely, Michigan is not subject to such settlement restrictions when it elects to bring an infringement suit.  That is, when Michigan elects to bring suit, Michigan has full authority to settle any such actions without the consent of ACSI.  (*Id.* at § 8.3.)

Michigan also retains ultimate control over the enforcement of its trademarks. For instance, if Michigan directs ACSI to take action to abate an alleged infringement, and ACSI fails to do so, Michigan retains the right to enforce the marks and bring suit, and ACSI is stripped of all sublicensing rights during the pendency of any such action.  (*Id.* at § 8.3.)  Therefore, this factor also cuts against ACSI.

In sum, the License Agreement both lacks hallmarks of an assignment and contains terms inconsistent with assignment.  The License Agreement is not "tantamount to an assignment" for purposes of granting non-registrant ACSI standing.



### E.     ACSI's lack of standing cannot be cured by joining Michigan

ACSI's lack of standing is fatal to its claims of trademark infringement. For example, in *Bliss* the court clarified that a "licensee has **no standing** where the license is non-exclusive or the license does not equate to an assignment."  339 F. Supp.2d at 959 (emphasis added).

Here, the License Agreement is both non-exclusive and does not equate to an assignment. As such, ACSI has no standing to bring its trademark infringement claims.  Moreover, joining the third-party trademark holder would not create standing for ACSI, and the Court should not permit Michigan to be joined to the proceedings.  *See National Licensing Ass'n, LLC. v. Inland Joseph Fruit Co.*, 361 F.Supp.2d 1244, 1257 (E.D. Wash. 2004) ("Because the [plaintiff] has no legally recognized interest that entitles it to bring or join an infringement action, its standing problem cannot be cured by the joinder of the patent owners and trademark registrants.")

### F.     ACSI does not have a Michigan Registration to Assert a Claim Under Mich. Comp. Laws § 429.42

In Count III, ACSI alleges trademark infringement under Mich. Comp. Laws §429.42. "Section 429.42(a) requires a plaintiff to have a registered mark under that act." *Andretti v. Borla Performance Indus.*, 426 F.3d 824, 834 (6th Cir. 2005). ACSI does not identify, nor possess, any registration with the State of Michigan. Therefore, Count III should be dismissed under Fed. R. Civ. P. 12(b)(6).



21

## IV.   CONCLUSION

A previous court has already determined that the License Agreement does not confer standing to ACSI to assert a claim of trademark infringement and ACSI is collaterally estopped from asserting otherwise. ACSI's remaining claims, to the extent they are also based on trademark infringement, should likewise be dismissed. Finally, because ACSI does not have a state trademark registration, its trademark infringement claims under the asserted Michigan statute also fails. Accordingly, the Court should grant ForeSee's motion to dismiss Counts I-V of the Complaint.


Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  December 18, 2018

  /s/ Chanille Carswell
Chanille Carswell (P53754)
Christopher C. Smith (P73936)
Anita C. Marinelli (P81986)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351
Email: ccarswell@brookskushman.com
        csmith@brookskushman.com
        amarinelli@brookskushman.com

*Attorneys for Defendant*



## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on <u>December 18, 2018,</u> I electronically filed the foregoing **FORESEE RESULTS, INC.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED and BRIEF IN SUPPORT** with the Clerk of the Court for the Eastern District of Michigan using the ECF System which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System: _____.

**BROOKS KUSHMAN P.C.**

   /s/ Chanille Carswell
Chanille Carswell (P53754)
Christopher C. Smith (P73936)
Anita C. Marinelli (P81986)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone:  (248) 358-4400
Facsimile:   (248) 358-3351
Email: ccarswell@brookskushman.com
     csmith@brookskushman.com
     amarinelli@brookskushman.com

*Attorneys for Defendant*

