# Exhibit 1

**EXPERT REPORT OF MATTHEW G. EZELL**

**Introduction**

1.      I am the principal and founder of Ezell Group LLC, a marketing research company located in Huntington Beach, California. My professional experience is summarized below in paragraphs 15 through 21.

2.      I understand that American Customer Satisfaction Index, LLC ("ACSI, LLC") claims that the terms ACSI and/or American Customer Satisfaction Index have become well recognized in the field of customer satisfaction. At the request of Meunier Carlin & Curfman, LLC, counsel for Defendant, I designed and caused to be conducted a survey to measure the recognition, if any, of the term ACSI with respect to customer satisfaction. Specifically, I was engaged to design a survey to measure the degree, if any, to which individuals involved in obtaining data about their company's customer satisfaction in the prior two years recognize ACSI.

3.      It is my opinion that the results of the survey support a finding that the term ACSI is not well recognized in the field of customer satisfaction. When asked to list any companies that measure customer satisfaction, no respondents named ACSI or American Customer Satisfaction Index. When asked to list any customer satisfaction measures, again no respondents named ACSI or American Customer Satisfaction Index.[1] The results of the aided recognition questions evidence, on a net basis after adjusting the survey data for mismeasurement error based on spurious recognition of the fictitious customer satisfaction

_____

[1] One respondent (0.5% of all respondents) named "the American customer index" in response to the question regarding customer satisfaction measures.

name FHXN, that approximately 23.5% of the relevant universe[2] recognized the term ACSI. This

level of recognition falls well short of the approximately 50% association generally required to

show secondary meaning or acquired distinctiveness.[3]

**Survey Background**

4.        Attached as **<u>Appendix A</u>** are the results of the survey that addressed the issue of

recognition of the term ACSI with respect to customer satisfaction. Appendix A contains copies

of the survey screener and questionnaire, response tables, survey screenshots, and other

survey-related materials.

5.        The sample selection, questions, questionnaire design, and interviewing

procedures employed in this survey were designed in accordance with the generally accepted

standards and procedures in the field of surveys. The survey was also designed to meet the

criteria for survey trustworthiness detailed in the Federal Judicial Center's *Manual for Complex*

*Litigation, Fourth*[4] and *Reference Manual on Scientific Evidence, Third.*

6.        I was responsible for the design of the survey as well as for the procedures to be

followed in conducting the interviews. Data gathering was carried out under my direction by

---

[2] The universe in this survey was defined as individuals employed in industries for which ACSI, LLC measures customer satisfaction who, in the past 24 months, have been involved in obtaining data about their company's customer satisfaction.  The screener portion of the questionnaire targeted the same 11 industries listed on ACSI, LLC's website: 1) Retail, 2) Transportation or shipping, 3) Energy utilities, 4) Health care, 5) Consumer shipping and mail, 6) Telecommunications and information, 7) Restaurant, 8) Manufacturing, 9) Finance and insurance, 10) E-business, and 11) Government.  See https://www.theacsi.org/industries
[3] *See* 6 McCarthy on Trademarks and Unfair Competition at §32:190 ("Generally, figures over 50% are regarded as clearly sufficient.") (citing cases).
[4] For the proffered poll or survey, "...Relevant factors include whether: the population was properly chosen and defined; the sample chosen was representative of that population; the data gathered were accurately reported; and the data were analyzed in accordance with accepted statistical principles...In addition, in assessing the validity of a survey, the judge should take into account the following factors: whether the questions asked were clear and not leading; whether the survey was conducted by qualified persons following proper interview procedures; and whether the process was conducted so as to ensure objectivity...."  See Federal Judicial Center, *Manual for Complex Litigation, Fourth*, Section 11.493, at 102-104 (2004).

Dynata, a leading provider of survey panels consisting of millions of individuals and business professionals. Data gathering for this survey was conducted between January 22 and February 12, 2021. See attached **Appendix B** for the survey data file.

7.      The survey conducted in this matter was administered under a double-blind protocol. That is, both the survey respondents and the staff of Dynata were kept uninformed or "blind" as to the purpose or sponsor of the survey.

**Sampling and Methodology**

8.      In accordance with standard practice, this survey employed an internet panel created and maintained by Dynata. The relevant universe for this survey consisted of males and females 18 through 65 years of age working in the United States who were involved in obtaining data about their company's customer satisfaction in the past 24 months.[5] In order to get a mix of respondents from various company sizes (measured in number of employees), quotas were established based upon the distribution of company size of U.S. businesses.  This data was obtained from Statistics of U.S. Businesses (SUSB) data[6] provided by the U.S. Census. See **Appendix C**, for the relevant portions of the SUSB Census data and my calculations on which I based quotas for company size.

---

[5] Additionally, the survey universe was also restricted to respondents who: (1) are employed or self-employed; (2) work in one of 11 industries for which ACSI, LLC measures customer satisfaction, *supra* note 2; (3) do not, nor does anyone else in their household, work for a marketing research or advertising company, or a company that offers customer satisfaction measures, scores, or analytics to other companies; (4) agreed to take the survey by themselves, without consulting any other persons or sources; and (5) successfully passed various quality control checks in the screener (e.g., CAPTCHA).
[6] See https://www2.census.gov/programs-surveys/susb/tables/2017/us_state_totals_2017.xlsx

**Survey Procedures and Questions**

9.      Under my direction, Dynata invited members of its B2B panel who work in the United States to the screening portion of the survey to determine whether they met the universe definition. Subsequently, those respondents who met the universe definition were invited to complete the main survey. See Appendix A, pages 1-4 for the full screener/questionnaire.

10.     The introduction to the main survey questions was as follows:

>       In this survey, you will be asked some questions relating to customer satisfaction.

>       Please understand that we are only interested in your opinions.

>       If you don't know the answer to a question, that is an acceptable answer. Please do not guess.

Next, respondents were asked Q1:

>       Please list any <u>companies</u> you can think of that measure customer satisfaction.

Respondents were provided with five text boxes to enter up to five names. Respondents who listed one or more names were asked Q2:

>       Can you think of any other <u>companies</u> that measure customer satisfaction?

Again, respondents were provided with five text boxes to enter up to five names. Next, respondents were asked Q3:

>       Please list any customer satisfaction <u>measures</u> you can think of.

Again, respondents were provided with five text boxes to enter up to five names. Next, respondents were asked Q4:

> Can you think of any other customer satisfaction <u>measures</u>?

Again, respondents were provided with five text boxes to enter up to five names. Next, respondents were told:

> The next screen will ask you about some names that may or may not be related to customer satisfaction.

Respondents were then asked about six names, one at a time, in randomized order.

Respondents were asked:

> With respect to customer satisfaction, have you heard of _____?

The six names asked about were ACSI, IPERCEPTIONS, JD POWER, NPS, QUALTRICS, and the fictitious name FHXN.

Finally, respondents were thanked for their time and participation.

**Survey Results**

11.     In response to Q1/Q2, the unaided questions about companies that measure

satisfaction, no respondents named ACSI or American Customer Satisfaction Index.

| TABLE 1 | | |
|---|---|---|
| UNAIDED AWARENESS, COMPANIES THAT MEASURE CUSTOMER SATISFACTION | | |
| Q1    Please list any <u>companies</u> you can think of that measure customer satisfaction. | | |
| Q2    Can you think of any other <u>companies</u> that measure customer satisfaction? | | |
| Response: | Number | Percent |
| JD Power | 34 | 17.0 |
| Amazon | 34 | 17.0 |
| Survey Monkey | 25 | 12.5 |
| Qualtrics | 24 | 12.0 |
| Microsoft | 23 | 11.5 |
| Google | 21 | 10.5 |
| NPS / Net Promoter Score | 19 | 9.5 |
| Yelp | 18 | 9.0 |
| Nielsen | 14 | 7.0 |
| Salesforce | 13 | 6.5 |
| Consumer Reports | 10 | 5.0 |
| Walmart | 8 | 4.0 |
| Apple | 8 | 4.0 |
| IBM | 8 | 4.0 |
| Facebook | 8 | 4.0 |
| BBB / Better Business Bureau | 7 | 3.5 |
| Zendesk | 6 | 3.0 |
| Ebay | 6 | 3.0 |
| Medallia | 6 | 3.0 |
| Gallup | 5 | 2.5 |
| Ipsos | 5 | 2.5 |
| Press Ganey | 5 | 2.5 |
| Target | 5 | 2.5 |
| Trip Advisor | 5 | 2.5 |
| Deloitte | 4 | 2.0 |
| ACSI / American Customer Satisfaction Index | 0 | 0.0 |
| Total Respondents | 200 | 100.0 |

*Notes:     Other company names accounted for less than 2% of the Total.

12.     In response to Q3/Q4, the unaided questions about customer satisfaction

measures, no respondents named ACSI or American Customer Satisfaction Index. One

respondent (0.5% of the total) named "the American customer index."

| TABLE 2 | | |
|---|---|---|
| UNAIDED AWARENESS, CUSTOMER SATISFACTION MEASURES | | |
| Q3      Please list any customer satisfaction <u>measures</u> you can think of? | | |
| Q4      Can you think of any other customer satisfaction <u>measures</u>? | | |
| Response: | Number | Percent |
| Surveys / Polling / Polls | 42 | 21.0 |
| Satisfaction / Satisfaction scores / Satisfied / Product satisfaction / etc. | 30 | 15.0 |
| Reviews / Ratings / Star rating / Stars | 17 | 8.5 |
| NPS / Net Promoter Score | 15 | 7.5 |
| CES / Customer Effort Score | 14 | 7.0 |
| Service / Customer service | 13 | 6.5 |
| Time / Timeliness / Speed | 13 | 6.5 |
| Quality / Quality of item / Quality of product | 12 | 6.0 |
| Loyalty / brand loyalty / degree of loyalty | 9 | 4.5 |
| Price / Pricing | 8 | 4.0 |
| Delivery | 6 | 3.0 |
| Value | 5 | 2.5 |
| Retention / customer retention | 5 | 2.5 |
| Repeat customer / Repeat purchase / repeat rate | 5 | 2.5 |
| Reliability | 5 | 2.5 |
| Social media / social mentions | 4 | 2.0 |
| Google / Google hits | 4 | 2.0 |
| Qualtrics | 3 | 1.5 |
| CSAT | 3 | 1.5 |
| Yelp / Yelp reviews | 3 | 1.5 |
| The American customer index | 1 | 0.5 |
| ACSI / American Customer Satisfaction Index | 0 | 0.0 |
| Total Respondents | 200 | 100.0 |

*Notes:    Other customer satisfaction measures accounted for less than 2% of the Total.

13.     The following table shows the results to Q6, which asked respondents whether they had heard of a list of six names, including ACSI. On a net basis, after adjusting the survey data for mismeasurement error based on spurious recognition of the fictitious customer satisfaction name FHXN, 23.5% of respondents recognized the name ACSI with respect to customer satisfaction.

| | | | | | | | | | *Net Percent |
|---|---|---|---|---|---|---|---|---|---|
| **TABLE 3** | | | | | | | | | |
| AIDED RECOGNITION | | | | | | | | | |
| Q6 | With respect to customer satisfaction, have you heard of (insert name from list)? | | | | | | | | |
| | | Number | | | | Percent | | | |
| | Yes | No | Don't know | Total | Yes | No | Don't know | Total | |
| ACSI | 64 | 127 | 9 | 200 | 32.0% | 63.5% | 4.5% | 100.0% | 23.5% |
| FHXN | 17 | 177 | 6 | 200 | 8.5% | 88.5% | 3.0% | 100.0% | 0.0% |
| IPERCEPTIONS | 35 | 155 | 10 | 200 | 17.5% | 77.5% | 5.0% | 100.0% | 9.0% |
| JD POWER | 192 | 8 | 0 | 200 | 96.0% | 4.0% | 0.0% | 100.0% | 87.5% |
| NPS | 69 | 120 | 11 | 200 | 34.5% | 60.0% | 5.5% | 100.0% | 26.0% |
| QUALTRICS | 124 | 65 | 11 | 200 | 62.0% | 32.5% | 5.5% | 100.0% | 53.5% |

* Note: Net percent is calculated by subtracting 8.5%, the amount of spurious recognition of the fictitious name FHXN.

**Conclusion**

14.      It is my considered opinion, based upon my education, background, professional

experience, my review of intellectual property legal treatises and case opinions, and based

upon my review and analysis of the survey results, that the results of the survey support a

finding that ACSI is not well recognized in the field of customer satisfaction. To the unaided

questions, no respondents named ACSI or American Customer Satisfaction Index and one

respondent (0.5%) named "the American customer index." The results of the aided recognition

questions evidence, on a net basis after adjusting the survey data for mismeasurement error

based on spurious recognition of the fictitious customer satisfaction name FHXN, that

approximately 23.5% of the relevant universe recognized the name ACSI. This level of

recognition falls well short of the approximately 50% association generally required to show

secondary meaning or acquired distinctiveness.[7]

**Qualifications**

15.      I have been retained on behalf of clients in the consumer product, industrial

product, and service sectors of the economy to provide marketing consulting and research

services.

16.      I have worked on litigation and non-litigation trademark and trade dress matters

for approximately nineteen years. During the past ten years, I have participated in the design

and execution of a variety of surveys relating to intellectual property matters, including

trademark, false advertising, and other related matters. Additionally, I am familiar with the

tests for trustworthiness of properly conducted surveys or polls and the accepted principles of

---

[7] *Supra* note 3.

survey research, detailed in the *Manual for Complex Litigation, Fourth* and *Reference Manual on Scientific Evidence, Third*.

17.    During the past five years, I have been retained in a number of litigation-related consultancies involving intellectual property matters, including matters before federal and state courts and the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office.

18.    I am a member of the American Association of Public Opinion Research (AAPOR) and the International Trademark Association (INTA). I served on INTA's The Trademark Reporter (TMR) committee from 2016 to 2019 and currently serve on INTA's Publications Committee.

19.    Attached hereto as **Appendix D** is a copy of publications that I have authored or co-authored in the last ten years.

20.    Attached hereto as **Appendix E** is a list of all trial and deposition testimony I have given in the last four years.

21.    Attached hereto as **Appendix F** is a copy of my curriculum vitae, describing my qualifications and professional background.

**Materials Considered**

22.    In addition to materials mentioned in this report, I considered the following materials in designing and conducting the survey in this matter: ACSI Methodology Paper (June 2008); First Amended Complaint filed in American Customer Satisfaction Index, LLC v. Foresee Results, Inc. matter, dated December 27, 2018; Complaint filed in CFI Group USA LLC v. Verint Americas Inc., dated September 5, 2019; Defendant's and Amended Answer and Counterclaims to Plaintiff's Complaint filed in CFI Group USA LLC v. Verint Americas Inc. matter, dated June 29,

2020; and Number of Firms, Number of Establishments, Employment, and Annual Payroll by Enterprise Employment Size for the United States and States, Totals:  2017.

23.     I also reviewed documents from American Customer Satisfaction Index, LLC v. Genesys Telecommuncations Laboratories, Inc. et al v. CFI Group USA, LLC, Civil Action No. 4:17-cv-12554. The documents I considered from that case were: Expert report of Robert Wallace dated December 31, 2019; portions of the deposition transcript of Robert G. Wallace, Jr. taken on February 21, 2020; and Genesys' Response to Motion for Partial Summary Judgment dated June 2, 2020.

### Compensation

24.      My fees for this engagement consist solely of billable time and expenses. Standard time is billed at the rate of $600.00 per hour and deposition and trial time are billed at the rate of $750.00 per hour. Research associate time is billed at the rate of $200.00 per hour.

25.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 19th day of February, 2021, in Huntington Beach, California.

_____
Matthew G. Ezell