UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN CUSTOMER SATISFACTION
INDEX, LLC,

      Plaintiff,                     Case No. 18-cv-13319

v.                                Hon. Gershwin A. Drain

FORESEE RESULTS, INC.,

      Defendant.

_____/

CFI GROUP USA LLC,

      Plaintiff,

v.                                Case No. 19-cv-12602
                                    Hon. Gershwin A. Drain

VERINT AMERICAS INC., d/b/a
ForeSee Results and successor-in-
interest to ForeSee Results, Inc.,

      Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [#89, 90] AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#103]**

## I.    INTRODUCTION

Presently before the Court in these consolidated cases is the Plaintiff

American Customer Satisfaction Index, LLC's (ACSI) Motion for Partial

Summary Judgment, filed on June 3, 2021.  Also, before the Court is the

Defendant ForeSee Results, Inc.'s Motion for Summary Judgment, filed on June 10, 2021. These matters are fully briefed and upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of these matters. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court grants the Plaintiff's Motion for Partial Summary Judgment and denies the Defendant's Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

In the mid-nineties, Dr. Claes Fornell and others at the University of Michigan introduced the American Customer Satisfaction Index (ACSI). At the time, this was a new type of method for measuring and improving customer satisfaction and enhancing the performance of firms and industries. ACSI methodology uses a unique version of a statistical algorithm called Partial Least Squares (PLS), developed by Dr. Fornell. In 1997, the University obtained two U.S. Trademark Registrations related to the Index: (1) Registration No. 2122772 for the word mark "ACSI" and (2) Registration No. 2122752 for the mark "ACSI" and design. The ACSI Index measures customer satisfaction for almost half of the United States economy, or more than 200 companies and organizations across 45 industries.

In 2001, Dr. Fornell formed ForeSee to apply the ACSI methodology to the digital environment, including websites. In April of 2002, the University granted

ForeSee a non-exclusive license to use the ACSI Trademarks.   In 2004, ForeSee entered into an agreement with Federal Consulting Group (FCG), a government intermediary that facilitates services between private contractors and government agencies.  FCG sought customer satisfaction measurement services using the ASCI methodology.  The $9.9 million contract's scope of work included developing "economic models for participating agency websites based on the American Customer Satisfaction Index (ACSI) methodology."  ForeSee was awarded a contract in 2009 with GSA, which also required the use of ACSI methodology.

In 2008, ACSI LLC was created, and the Index was spun off from the University.  The University granted ACSI, LLC a license to the marks and the right to sublicense the marks and "all rights and responsibility for policing and enforcing them."  ASCI, LLC was assigned all of the existing licenses to the marks.  ForeSee acknowledged the assignment.

On April 4, 2012, ACSI, LLC and ForeSee entered into another sublicense agreement.  In exchange for $300,000 per year, ForeSee was permitted to use the ACSI Trademarks in connection with its services pursuant to the parties' agreement.  On August 8, 2013, ForeSee provided written notice it was voluntarily terminating the sublicense, effective December 8, 2013. ForeSee claims it sought to focus on its own brand. Just prior to the effective date of the sublicense's termination, ForeSee employees began meeting about the dissolution of "our

relationship with the ACSI" and to discuss how to "rebrand[] our methodology and Index" in light of the clients' perception that "we ARE the ACSI[.]" ECF No. 90, PageID.3018.

Meanwhile, ForeSee sought to incorporate a different algorithm methodology for measuring customer satisfaction and industry performance called the Generalized Structured Component Analysis ("GSCA"). ForeSee maintains GSCA is very similar to PLS and remedied a primary limitation. ForeSee's Chief Research Scientist and the co-creator of the GSCA claims the "methodology is in line with the philosophy, theory and analytic (statistical) approach of ACSI," but it is not the "same as ACSI, since it is now different in the statistical algorithm[.]" *Id.*, PageID.3028. ForeSee's new methodology was implemented around 2011.

Even though ForeSee's license to use the ACSI marks terminated in December of 2013, the record shows that as early as mid-2014, ForeSee began meeting with various government agencies and represented that ForeSee's methodology for customer satisfaction and product quality measurement utilized the ACSI methodology. The record also shows that all of these agencies required the use of ACSI methodology and that ForeSee representatives and employees knew they could no longer represent an affiliation with ACSI.

For example, in discussing a Request for Quote (RFQ) with the VA, ForeSee documents reveal that representatives knew the VA required an ACSI "score of 76

4

by fiscal year 2015 and a VA facility level minimum ACSI score of 72 by fiscal year 2017." *Id*., PageID.3023.   Indeed, the VA informed ForeSee that only companies with a sub-license to use the ACSI methodology could supply a quote, because the requirement that the quote use ACSI methodology "cannot be struck." *Id*. at PageID.3034.

ForeSee's Legal Department advised employees that "[w]e want to emphasize our history and experience with the ACSI, but as we are no longer licensing the ACSI name and brand," employees could no longer claim any association with the ACSI Index or mark.   *Id*.   Representatives at ForeSee acknowledged that "it is OK to report facts about how the ForeSee methodology was born out of the ACSI, but we need to disclaim any association with or perceived endorsement from ACSI or its affiliates."   *Id.*

Yet, ForeSee sent email correspondence to Government agencies indicating its subscription service included "measurement through our proprietary methodology ACSI." *Id*., PageID.3053.  ForeSee was awarded a contract with FNS in September of 2014 that required the use of the ACSI methodology.  Similarly, ForeSee was awarded a contract with the Department of Health and Human Services for a one-year subscription providing "continuous full-service measurement of customer satisfaction with the www.nichs.nih.gov website, utilizing the American Customer Satisfaction Index (ACSI) methodology."   *Id*.,

PageID.3076.  ForeSee entered into multiple contracts with NIH/DHHS requiring the use of ACSI methodology with "[t]he cost for this year of the ACSI measurement of customer satisfaction for the ACSI Survey is $46,500.00."  *Id.*, PageID.3199.

Similarly, ForeSee represented to the NOAA that it had proprietary ownership of the ACSI methodology in 2014 and the parties entered into a five year option contract with the scope of the work covering ACSI measurement of customer satisfaction.

ForeSee was acquired by Answers Corporation and eventually acquired by Verint Americas, Inc. in December of 2018 and continues to do business as ForeSee.  In February of 2018, ASCI sent a demand letter to Defendant when it discovered ForeSee made representations found in a GSA Price list that ForeSee's services included "proprietary ACSI survey tools," "single dedicated American Customer Satisfaction Index (ACSI) web or mobile measurement," research and analysis based on the ACSI Index, and audits "defined by client priorities and American Customer Service Survey (ACSI) data."

In response, ForeSee executives wrote correspondence to GSA recommending that the GSA Advantage "submit[] the modification request to just remove the brand name language now."  As such, the resulting GSA schedule stated, "[s]ince 2011, ForeSee's methodology has been the gold standard of

customer's satisfaction for the Federal Government." *Id.*, PageID.3347. Following ACSI's demand letter in February of 2018, ForeSee persisted with representing its services used and were affiliated with ACSI's Index and Trademarks. In an April 2018 email to the USPTO, ForeSee again sent its GSA listing which stating, "[s]ince 1999, the gold standard of customer satisfaction for the Federal Government has been the American Customer Satisfaction Index (ACSI)." *Id.*, PageID.3367.

## III.   LAW & ANALYSIS

### A.  ACSI LLC's Motion for Partial Summary Judgment

#### 1.  Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the

court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### 2. Unfair Competition Claims (Count II and Count V) and ForeSee's Sixth and Seventh Affirmative Defenses

The Lanham Act "prohibits the unauthorized use of a registered trademark when selling or advertising a good or service using the trademark is likely to confuse or deceive consumers." *U.S. Structures, Inc. v. J.P. Structures, Inc*., 130 F.3d 1185, 1188 (6th Cir. 1997). In order to avoid summary judgment in a Lanham Act case alleging violation of § 43 (15 U.S.C. § 1125). "the non-moving party must establish that genuine factual disputes exist concerning those factors that are material to whether confusion is likely in the marketplace as a result of the alleged infringement." *Holiday Inns, Inc. v. 800 Reservation, Inc*., 86 F.3d 619, 622-23 (6th Cir. 1996).

In other words, ForeSee must raise a genuine issue of material fact as to (1) whether its use of the ACSI Trademarks was without the registered owner's consent, and 2) whether this unauthorized use was likely to cause confusion in the marketplace as to the origin or sponsorship of the product. *U.S. Structures,* 130 F.3d at 1188. "Likewise, the standard of proof needed to prevail on a Michigan common law action for unfair competition is a showing of "'likelihood of

confusion'" *Big Boy Restaurants v. Cadillac Coffee Co*., 238 F. Supp.2d 866, 875 (E.D. Mich. 2002).

Here, the record is replete with evidence that ForeSee did not have ACSI's consent to use the ACSI Trademarks in connection with the sale of its customer satisfaction survey services.   Following ForeSee's termination of the license, ForeSee lacked authority to use the ACSI Trademarks to promote its customer satisfaction measurement services.   "Once a [] license contract is terminated, there is no doubt that the former [] licensee has no authorization or consent to continue use of the mark."  4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:31 (5th ed.).  "In sum, the law is simple.  If, as a matter of contract law, a service mark or trademark license has ended, the licensee has no right to continue to use the licensed mark.  Any such used is without the trademark owner's consent and constitutes infringement."  *Id*.

Moreover, ForeSee was aware it was no longer permitted to use the ACSI marks.  In November of 2013, ForeSee executives held company rebranding meetings to finalize the phasing out of ACSI methodology from the company's marketing materials.  Sales representatives were repeatedly admonished to disclaim any association with ACSI.  However, as early as 2014, ForeSee's sales force met with various government agencies and sent follow-up emails representing that ACSI methodology was used and belonged to ForeSee.  *See* ECF

No. 90, PageID.3051-3064.  In countless emails, ForeSee represented that its services used "the American Customer Satisfaction Index . . .[and] [t]he ACSI has been regarded in the Federal arena as the "Gold standard" in measuring goods and services since 1999." *Id*., PageID.3071.

Because ForeSee knew it could not use the ACSI marks, Plaintiff is entitled to summary judgment on ForeSee's Sixth and Seventh Affirmative defenses. District courts "can and do resolve affirmative defenses at the summary judgment stage." *Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 337 (6th Cir. 2017).  The summary judgment standard of review remains the same. *Id*.

ForeSee's Sixth Affirmative defense asserts that Plaintiff's claims are barred because ForeSee's use of the marks was "licensed and/or otherwise authorized." ECF No. 21, PageID.497.  ForeSee's Seventh Affirmative defense disclaims willful infringement.  *Id*.  Lanham Act violations are willful if the defendant "had knowledge that its actions constitute an infringement." *Ford Motor Co v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) (citation omitted).  "[A] defendant's knowledge that its actions constitute an infringement establishes that the defendant acted willfully," and "something less than proof of actual knowledge will suffice to establish knowledge and, hence, willfulness." *Fitzgerald Publ'g Co. v. Baylor Pub'lg Co*., 807 F.2d 1110, 1115 (2d Cir. 1986); *accord Fishman Transducers v.*

*Paul*, 684 F.3d 187, 191 (1st Cir. 2012) ("[W]ilfulness requires [ . . .] at least conduct deemed 'objectively reckless' measured against standards of reasonable behavior.").  The evidence before the Court demonstrates that ForeSee was aware it no longer had the authority to use the ACSI marks in connection with its products, therefore Plaintiff is entitled to judgment in its favor on Defendant's Sixth and Seventh Affirmative defenses.

Moreover,  as to likelihood of confusion, the record is replete with examples of ForeSee's continued use of the ACSI marks after terminating its license.  "It is axiomatic that use of a license mark by an ex-licensee after termination of the license creates a likelihood of confusion, infringing and unfairly competing with the rights of the trademark owner."  *Ford Motor Co. v. A.C. Car Grp. Ltd*., No. CIV. A. 01-72333, 2002 WL 1072258, at *2 (E.D. Mich. Mar. 4, 2002);  *see also Ford Motor Co. v. Thermoanalytics, Inc*., No. 14-CV-13992, 2015 WL 6522857, at *5 (E.D. Mich. Oct. 28, 2015) ("Typically, where an ex-licensee continues to use the licensed trademark, the continued use by itself creates a likelihood of confusion under the Lanham Act.")

Plaintiff argues it is entitled to judgment as a matter of law on the issue of likelihood of confusion because of the significant evidence in the record that ForeSee continued to use the ACSI mark after termination of the sublicense in December of 2013. *See U.S. Structures, Inc. v. J.P. Structures, Inc*. 130 F.3d 1185,

1189 (6th Cir. 1997).   In *U.S. Structures*, the Sixth Circuit Court of Appeals concluded that evidence customers believe the good or service purchased is still affiliated with the registered owner of the mark, coupled with "continued, unauthorized use of an original trademark by one whose license to use the trademark has been terminated" is sufficient to establish "likelihood of confusion" without the need to analyze all of the *Frisch* factors.   130 F.3d 1185, 1190. Plaintiff argues the facts in *U.S. Structures* are analogous to the facts in this case. The Court agrees that the facts of this case fall squarely within the ambit of *U.S. Structures*, and likelihood of confusion is established as a matter of law on ACSI LLC's § 1125(a) claim.

However, even if the Court considers all of the *Frisch* factors, ACSI still establishes a likelihood of confusion.   The *Frisch* factors are: (1) strength of the mark, (2)  relatedness of goods or services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels, (6) likely degree of purchaser care, (7) intent of the defendant in selecting the mark, and (8) likelihood of expansion of product line.   *Frisch's Rests. v. Elby's Big Boy, Inc*., 670 F.2d 642, 647 (6th Cir. 1982).

### a.  Strength of the Mark

The strength of the mark factor "focuses on the distinctiveness of a mark and its recognition among the public." *Progressive Distribution Servs., Inc. v. United*

*Parcel Serv., Inc*., 856 F.3d 416, 427 (6th Cir. 2017). "[A]mark is highly distinctive … if the public readily accepts it as the hallmark of a particular source." *Id*. "The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Id.* (quoting Daddy's *Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr*., 109 F.3d 275 (6th Cir. 1997).

Defendant argues the ACSI Trademarks are generic, however, if a trademark has been registered, there is a presumption that the term is not generic, and a defendant must overcome the presumption. *Bath & Body Works Inc. v. Luzier Peronalized Cosms. Inc*., 76 F.3d 743, 748 (6th Cir. 1996). Defendant has not overcome this presumption when the evidence of record is that Dr. Fornell developed a brand new customer satisfaction index employing a latent variable cause and effect model. ForeSee points to the Law Dictionary which defines ACSI as "a new way to evaluate satisfaction in American households," without supporting legal authority that a term in a dictionary merits a conclusion that a term is generic as a matter of law. This factor favors a likelihood of confusion.

### b. Relatedness of Goods and Services

Where the parties compete directly, "confusion is likely if the marks are sufficiently similar." *Progressive Distrib. Servs*., 856 F.3d at 431. The Sixth Circuit has explained the relatedness "inquiry focuses on whether goods or services

that are similarly marketed and appeal to common customers are likely to lead consumers to believe they come from the same source or are somehow connected with or sponsored by a common company." *Id.* (internal quotation marks and citations omitted).

Here, ForeSee confusingly argues that while the parties' services are related, the confusion is the fault of Dr. Fornell and "consumers prior knowledge of ForeSee as applying ACSI model/methodology." ECF No. 128, PageID.16182. ForeSee concedes the parties compete with the same entities to provide customer satisfaction and product quality measurement services. This factor favors a likelihood of confusion.

### c. Similarity of the Marks

"Similarity of marks is a factor of considerable weight." *Progressive Distrib. Servs.*, 856 F.3d at 432. This factor shows a likelihood of confusion because ForeSee used the actual ACSI Trademarks.

### d. Evidence of Actual Confusion

While evidence of actual confusion is not a prerequisite to show likelihood of confusion, "[n]othing shows the likelihood of confusion more than the fact of actual confusion." *Progressive Distrib. Servs.*, 856 F.3d at 433. "Isolated instances of confusion are insufficient to support a finding of likely confusion." *Id.*

Here, the evidence of record shows that several government agencies believed they were receiving ACSI scores and data when they asked ForeSee for "Breakdowns in ACSI."  The record is replete with numerous government contract documents that required ACSI deliverables from ForeSee after the termination of the parties' license agreement.  This factor increases the likelihood of confusion.

### e.  Marketing Channels Used

This factor requires the Court to consider "how and to whom the respective goods or services of the parties are sold."  *Progressive Distrib. Servs*.,  856 F.3d at 434.  If the goods are sold through different channels, there is less likelihood of confusion.  *Id.*  If the parties have different customers and market their goods or services differently, the likelihood of confusion decreases.  *Id.* This factor also increases the likelihood of confusion as the parties use the same marketing channels to sell their services.

### f.  Purchaser Care

A higher degree of care correlates with a decrease in the likelihood of confusion.  *Progressive Distrib. Servs*.,  856 F.3d at 434.  There is a high degree of purchaser care with respect to the parties' services, thus this factor decreases the likelihood of confusion.

### g.  Defendant's Intent in Selecting the Mark

Here, the evidence shows Defendant chose to capitalize on the ACSI

Trademarks but did not want to pay for a license to do so.  Given the requirements

of numerous government agencies that their contracts include the use of ACSI

methods and metrics, ForeSee knew it could only secure these contracts if it

claimed affiliation with ACSI.  This factor favors a likelihood of confusion.

### h.  Likelihood of Expansion of the Product Lines

Neither party discusses the likelihood of expansion of the product lines, thus

this factor does not appear to increase the likelihood of confusion.

### i.   Balancing of the Factors

Upon balancing the *Frisch* factors, ForeSee's continued use of the marks

subsequent to termination of the parties' license agreement is likely to cause

confusion with respect to the origin and sponsorship of ForeSee's products.

Accordingly, for the reasons articulated above, Plaintiff is entitled to

judgment in its favor on its unfair competition claims (Counts II and V) and on

ForeSee's Sixth and Seventh Affirmative defenses.

### 3.  ForeSee's Fourth Affirmative Defense (Fair Use, Collateral Use, Comparative Use, Unclean Hands)

Plaintiff also argues it is entitled to summary judgment on ForeSee's fourth

affirmative defense because ForeSee has acted in bad faith.  *Speedeon Data, LLC*

*v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 337 (6th Cir. 2017).  The fair

use doctrine prohibits a trademark holder from precluding others from using the

"word that forms the trademark in its primary or descriptive sense." *ETW Corp. v.*

*Jireh Pub. Inc*., 332 F.3d 915, 920 (6th Cir. 2003).  The doctrine permits others to

"use a protected mark to describe aspects of their own goods." *Id*.  However,

Defendant may only rely on these defenses if its use of the marks was "descriptive

of and used fairly and in good faith only to describe the goods or services of such

party, or their geographic origin." 15 U.S.C. § 1115(b)(4).

The Court agrees that ForeSee cannot raise these defenses because the

record reveals ForeSee acted in bad faith and is not entitled to fair use defenses.

*Marketquest Grp., Inc. v. BIC Corp*., 862 F.3d 927, 937 (9th Cir. 2017 ("good faith

is an element of the defense, not merely a factor to consider when it is relevant in a

given case.").

The focus of a fair use defense focuses on whether ForeSee "intended to

capitalize on plaintiff's good will." *EMI Catalogue P'ship v. Hill, Holliday,*

*Connors, Cosmopulus Inc*., 228 F.3d 56, 66 (2d Cir. 2000).  The record here

reveals that ForeSee continued to use the ACSI mark in order to secure contracts

with government agencies which required ACSI methodology and metrics.

### 4.  ForeSee's Fifth Affirmative Defense (Laches, Waiver, Estoppel and Acquiescence)

Plaintiff argues ForeSee's equitable defenses are precluded by its unclean

hands and the Court agrees.  Laches is the "negligent and unintentional failure to

protect one's rights." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc*.,

270 F.3d 298, 320 (6th Cir. 2001).  To succeed on a laches defense, ForeSee must show (1) lack of diligence by the party against whom the defense assert, and (2) prejudice to the party asserting it.  *Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.* 796 F.3d 576, 584 (6th Cir. 2015).  A trademark registrant may only be accountable for delay attributed to the time the party "knew or should have known that the infringement of his or her rights ripened into a provable claim." *AWGI, L.L.C. v. Atlas Trucking Co., L.L.C.*, 381 F.Supp.3d 832, 844 (E.D. Mich. 2019).  In the Sixth Circuit, there is "a strong presumption that any delay by the plaintiff is reasonable if the applicable state statute of limitations has not lapsed." *Herman Miller*, 270 F.3d at 320.

Here, the defense of laches is not available to ForeSee.  An infringer claiming laches "must be able to demonstrate the absence of any intent to confuse and deceive the public; there must be a lack of evidence showing a scheme to 'foist upon the public the (products) of the defendant as those of' the plaintiff. *Cuban Cigar Brands NV v. Upmann Intern., Inc.*, 457 F. Supp. 1090 (S.D.N.Y. 1978) (citation omitted).  It is well settled that a "former licensee cannot mislead the public into believing that its affiliation continues once the licensing arrangement has ceased."  *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975).  Acquiescence requires active consent, and estoppel requires "misrepresentations, affirmative acts of misconduct, or intentionally

misleading silence by the plaintiff." WM Mfg. Co. v. Dura Corp., 592 F.2d 346, 350 (6th Cir. 1979); Coach House Rest., Inc. v. Coach & Six Restaurants, Inc., 934 F.2d 1551, 1556 (11th Cir. 1991).  In order to establish the defense of equitable estoppel in an infringement action, a defendant must prove the following (1) the plaintiff engaged in misleading conduct that lead the defendant to believe the plaintiff would not bring an infringement action, (2)  reliance on the misleading conduct by the defendant, (3)  material prejudice suffered by the defendant as a result of the defendant's reliance.  *See Scholle Corp v. Blackhawk Molding Co., Inc.*, 133 F.3d 1469, 1471 (Fed. Cir. 1988).  ForeSee has not shown any such conduct by Plaintiff.  Finally, laches is precluded in cases of willful infringement such as the case here.  *Evergreen Safety Council v. RSA Network, Inc.* 697 F.3d 1221, 1228 (9th Cir. 2012).  In this case, ForeSee continued to use the ACSI mark and represented it used the ACSI Index even though it knew its GSCA did not use the same algorithm.  Because ForeSee's infringement was willful, Plaintiff is entitled to judgment in its favor on ForeSee's fifth affirmative defense.

### 5. ForeSee's Ninth, Tenth and Eleventh Affirmative Defenses (Related to the Validity of the ACSI marks)

Finally,  ForeSee alleges various affirmative defenses related to the validity of the ACSI Trademarks.  However, the ACSI Trademarks are incontestable under 15 U.S.C. § 1115(b).  Plaintiff is entitled to judgment in its favor on ForeSee's Ninth, Tenth and Eleventh Affirmative defenses.

### C.  Defendant's Motion for Summary Judgment

ForeSee moves for summary judgment on all of ACSI's claims in the First Amended Complaint raising various defenses, none of which have merit. Accordingly, the Court will deny ForeSee's Motion for Summary Judgment.

First, ForeSee argues it is entitled to summary judgment because of non-party CFI Software's execution of a General Release in a Joinder and Waiver Agreement.  This argument is without merit.  ForeSee's defense concerns the fact that when Dr. Fornell sold ForeSee to Answers, Dr. Fornell provided a General Release of all claims relating to ForeSee and represented that as of the date of sale, December of 2013, ForeSee did not infringe or misappropriate any intellectual property rights of any person or engage in unfair competition or trade practices.

As an initial matter, Defendant failed to plead the affirmative defense of release, and therefore, it has been waived.  Fed. R. Civ. P. 8(c); *Jack Mann Chevrolet Co. v. Assocs. Inv. Co.*, 125 F.2d 778, 784 (6th Cir. 1942); *Parker v. City of Detroit*, No. 16-CV-13036, 2018 WL 4206968, at *3 (E.D. Mich. Sep. 4, 2018). To avoid application of Rule 8(c), ForeSee characterizes its defense as "waiver." Yet, the doctrine of release is the premise of Defendant's argument, and not waiver.

Releases are strictly construed and releases that purport to release future conduct are generally void.  *See Hallman v. Dover Downs, Inc.* No. CIV.A. 85-618

20

CMW, 1986 WL 535, at *4 (D. Del. Dec. 31, 1986); *see also* 29 Williston on

Contracts § 73:9 (4th ed.) ("A general release releases all present, but not future,

claims."); *Hines v. G. Reynolds Sims & Assocs., P.C.*, No. CIV.A. 12-12478, 2013

WL 1774938, at *3 (E.D. Mich. Apr. 25, 2013) ("Michigan courts have enforced

the tenet of hornbook law, refusing to interpret releases to cover future claims

arising from future conduct where the release does not explicitly reference such

scope.").  As such, ForeSee's argument that non-party CFI Software released any

and all claims arising from ForeSee's conduct is without merit.

Even if releases of future claims were enforceable, the Gerneal Release does

not cover future claims; it applies only to claims that existed at the time of the

execution.  "When interpreting a contract, the role of a court is to effectuate the

parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found*., 903 A.2d 728, 739

(Del. 2006).  A court "must rely on a reading of all of the pertinent provisions of

the [contract] as a whole, and not on any single passage in isolation. *O'Brien v.

Progressive N. Ins*. Co., 785 A.2d 281, 287 (Del. 2001) (footnote omitted).

Under Section 4, the release was "[e]ffective for all purposes as of the

Effective Time," December 20, 2013.  ECF No. 106, PageID.10700.  ForeSee's

argument is misplaced since Plaintiff's claims arise out of ForeSee's post-closing

conduct.  In other words, Plaintiff's claims are based on conduct occurring after the

"date hereof" on December 20, 2013, therefore there release is inapplicable to

these claims.  The release clarifies that it applied to claims "that do now exist, may

exist or heretofore have existed with respect to the subject matter of this release."

*Id.*

Moreover, neither ACSI LLC nor CFI are parties to the General Release.

ForeSee argues that Plaintiff is an affiliate of CFI Software.  ForeSee bases this

argument on the fact that Dr. Fornell had some overlapping ownership in CFI

Software.  However, Defendant acknowledges that Dr. Fornell owned roughly 72%

of CFI Software, CFI Software only owned 37.82% of ForeSee.  The Release

Agreement provides that "nothing in this Agreement, express or implied, is

intended to confer on any Person other than the parties hereto or their respective

successors and assigns any rights, remedies, obligations or liabilities pursuant to or

by reason of this Agreement."  *Id*.   Because Plaintiff did not waive or release its

claims, ForeSee is not entitled to summary judgment on this basis.

Additionally, ForeSee argues it is entitled to summary judgment based on

the doctrines of laches, estoppel, fair use and acquiescence.  However, the Court

has already concluded that Plaintiff is entitled to judgment in its favor on these

affirmative defenses based on Defendant's unclean hands.  *See Days Inn*

*Worldwide, Inc. v. Adrian Motel Co., LLC*, No. 07-13523, 2009 WL 3199882, at

*12 (E.D. Mich. Sep. 30, 2009) (precluding laches, acquiescence, and/or equitable

estoppel).  The record before the Court shows that ForeSee voluntarily terminated

22

its license to use the ACSI related marks in 2013 and had meetings with employees to discuss phasing out of ACSI marks.  Yet, ForeSee continued to use the ACSI marks and represent that it utilized the ACSI methodology in connection with its services in order to secure business with several government agencies, including GSA, USPTO, and FCG.

Similarly, ForeSee has not overcome the presumption of validity with respect to the ACSI marks.  *See Bath & Body Works Inc. v. Luzier Personalized Cosms. Inc*., 76 F.3d 743, 748 (6th Cir. 1996).   ForeSee argues "American Customer Satisfaction Index" is generic, similar to "chocolate fudge" soda and "honey brown" ale are generic.  However, there is no evidence in the record to support this assertion.  Rather, the record is that the ACSI Index was a "new customer satisfaction index for the U.S. that employed a latent variable cause-and-effect model."  Moreover, ForeSee's conduct suggests the Trademarks are not generic because it paid a license fee to use them and had meetings with staff after the license's termination to discuss phasing out the ACSI verbiage.

For all of these reasons, Defendant is not entitled to judgment in its favor on any of Plaintiff's claims.

## IV.   CONCLUSION

Accordingly, Plaintiff's Motion for Partial Summary Judgment [#89, #90] is GRANTED.   Plaintiff is entitled to partial summary judgment in its favor on

Counts II and V of the First Amended Complaint and on ForeSee's Fourth, Fifth,

Sixth, Seventh, Ninth, Tenth, and Eleventh Affirmative Defenses.

Defendant's Motion for Summary Judgment [#103] is DENIED.

IT IS SO ORDERED.


Dated:  February 14, 2022                    /s/ Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             U.S. DISTRICT JUDGE



CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 14, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager