# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN CUSTOMER SATISFACTION INDEX, LLC, | |
| Plaintiff, | Case No. 2:18-cv-13319 |
| v. | Hon. Gershwin A. Drain Magistrate Judge Anthony P. Patti |
| FORESEE RESULTS, INC., | |
| Defendant. | |
| CFI GROUP USA LLC, | |
| Plaintiff-Counterclaim Defendant, | Case No. 2:19-cv-12602 |
| v. | Hon. Gershwin A. Drain Magistrate Judge Anthony P. Patti |
| VERINT AMERICAS INC., | |
| Defendant-Counterclaimant. | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING THE PENDING MOTIONS TO EXCLUDE EXPERT WITNESSES

**TABLE OF CONTENTS**

**I.**    INTRODUCTION ................................................................................ 1

**II.**   IMPORTANT DAMAGES ISSUES HAVE NOT BEEN DECIDED .......... 2

**III.**  RELEVANCE OF THE PARTIES' EXPERT OPINIONS ............................ 5

    **A.**   The Parties Agree That The Damages Experts (HKA and Haas) Are Relevant ................................................................................. 5

    **B.**   Mr. Ezell Remains Relevant ...................................................... 10

    **C.**   Defendants Do Not Object To Plaintiffs' Withdrawal Of Mr. Wallace 13

    **D.**   Dr. Leonard Remains Relevant ................................................. 13

    **E.**   Dr. Benkí, Dr. Chin, And Dr. Steffey All Remain Relevant ................... 16

    **F.**   Plaintiffs Withdrawal Of Dr. Hair Does Not Affect The Relevance Of ForeSee's Technical Experts ........................................................ 19

**IV.**  CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*adidas Am., Inc. v. Payless Shoesource, Inc.*,
No. CV 01-1655-KI, 2008 WL 4279812 (D. Or. Sept. 12, 2008) ............... 10, 14

*Balance Dynamics Corp. v. Schmitt Industries, Inc.*,
204 F.3d 683 (6th Cir. 2000) .................................................... *passim*

*Crewzers Fire Crew Transp., Inc. v. United States*,
98 Fed. Cl. 71 (2011) ............................................................... 8

*Crewzers Fire Crew Transp., Inc. v. United States*,
741 F.3d 1380 (Fed. Cir. 2014) ............................................. 8

*Laukus v. Rio Brands, Inc.*,
391 F. App'x 416 (6th Cir. 2010) ........................................ 14, 16, 18

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
No. 20-3598, 2022 WL 2751685 (6th Cir. July 14, 2022) ......................... *passim*

*McLeod Grp, LLC. v. United States*,
840 F. App'x 525 (Fed. Cir. 2020) ........................................ 8

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,
316 U.S. 203 (1942) ................................................................ 12

*Rupp v. Courier-J., Inc.*,
839 F. App'x 1003 (6th Cir. 2021) .................................... 14

*Wynn Oil Co. v. Am. Way Serv. Corp.*,
943 F.2d 595 (6th Cir. 1991) ............................................. 12

## STATUTES

15 U.S.C. § 1117(a) .......................................................... *passim*

**OTHER AUTHORITIES**

5 McCarthy on Trademarks and Unfair Competition (5th ed.)
§ 27:41 ...................................................................................................3
§ 30:75 ...................................................................................................3

## I.    <u>INTRODUCTION</u>

Unsurprisingly, the parties disagree on which of the motions to exclude remain relevant. Plaintiffs' Supplemental Brief Regarding the Pending Motions to Exclude Expert Witnesses ("Plaintiffs' Brief") (ECF No. 159)[1] significantly oversimplifies the remaining issues and burdens of proof in this case by, *inter alia*, overextending the Court's summary judgment liability rulings, ignoring controlling law regarding damages in unfair competition and false advertising cases, and conflating the Court's finding of liability generally with the higher level of proof required to prove entitlement to monetary damages. Notably absent from Plaintiffs' Brief is any discussion of the relevant law regarding unfair competition and/or false advertising damages.

The parties do agree that the respective damages experts remain relevant but disagree as to (i) the scope of that relevance and (ii) the relevance of the remaining experts. Plaintiffs argue that none of the remaining experts other than the damages experts remain relevant. But Plaintiffs ignore the issues relevant to damages that still must be decided. Both the trademark and technical experts remain relevant to damages issues such as apportionment, reputational harm, and equitable considerations. With the exception of Mr. Wallace (*see infra* Part III.C.), the remaining experts are relevant, and each of these pending motions to exclude need to be addressed.

---

[1] Citations to the record are to the CFI case (2:19-cv-12602) unless otherwise specified.

## II.    <u>IMPORTANT DAMAGES ISSUES HAVE NOT BEEN DECIDED</u>

The Sixth Circuit Court of Appeals recently confirmed the distinction between a finding of liability and the proof required to establish entitlement to damages. *Max Rack, Inc. v. Core Health & Fitness, LLC*, No. 20-3598, 2022 WL 2751685, at *8 (6th Cir. July 14, 2022). The Sixth Circuit explained:

> At the outset, keep in mind a critical distinction in the Lanham Act between proving a violation and proving a proper remedy . . . We should not conflate the minimum showing required to prove a violation with the more rigorous showing required to obtain damages.

*Id.* Absent from Plaintiffs' Brief is any discussion regarding what is required to meet this "more rigorous showing required to obtain damages, or how the expert testimony relates to this required showing. Plaintiffs fail to address key damages issues that have not been decided and how expert testimony relates to those issues. At this stage of the case, CFI Group USA, LLC ("CFI") is still required to satisfy its burden of proving which contracts it is entitled to seek damages on. To do that, CFI must prove a causal relationship between the specific acts of unfair competition/false advertising[2] and the contracts (i.e., call orders) on which it seeks to disgorge ForeSee's profits. *Id.* at *13 ("a plaintiff likely must show some connection between the identified 'sales' and the alleged infringement.").[3] Further, CFI also must provide evidence that shows that the unfair

---

[2] Defendants respectfully disagree with the Court's rulings in this regard but acknowledge such rulings. *See, e.g.*, ECF No. 151, PageID.32537.

[3] Plaintiffs' Brief references CFI's cause of action for tortious interference with a business expectancy, but references no ruling specifically directed to this cause of action. ECF No. 159, PageID.32653.

competition/false advertising actually confused or deceived some government customers. *Id.* at *16 ("Before awarding 'marketplace' damages like lost profits, for example, courts generally require a plaintiff to show that an infringing mark has *actually* confused some consumers about the mark's affiliation with the plaintiff's good (not just that it is *likely* to do so." (emphasis in original)); 5 McCarthy on Trademarks and Unfair Competition § 30:74 (5th ed.). Finally, to be entitled to disgorgement of profits, CFI must demonstrate, *inter alia*, that the unfair competition/false advertising caused it harm (lost sales or profits) or that ForeSee gained sales/profits <u>because of the unfair competition/false advertising</u>. *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 695 (6th Cir. 2000); 5 McCarthy on Trademarks and Unfair Competition § 27:41 (5th ed.) ("to recover damages, the plaintiff in a false advertising case must prove that the damages were caused by the illegally false statements of defendant").

Each of these inquiries are distinct from the Court's findings with respect to liability. *Max Rack, Inc.*, 2022 WL 2751685 at *15 ("To obtain damages, then, the plaintiff must do more than prove the 'likelihood of confusion' that suffices to establish a defendant's liability"). Plaintiffs' Brief erroneously argues that the Court has decided the issue of the causal link between ForeSee's false advertising and CFI's alleged economic injuries. ECF No. 159, PageID.32656. But this damages issue was not before

the Court on summary judgment.[4] Further, as previously noted, the proof required to establish liability is not as rigorous as the demanding showing required to obtain damages. *Max Rack*, 2022 WL 2751685 at *8; *Balance Dynamics*, 204 F.3d at 694. Absent from CFI's briefing, or the Court's Order, is any discussion regarding which specific contracts obtained by ForeSee were the result of the offending conduct. Likewise, American Customer Satisfaction Index, LLC ("ACSI LLC") still must offer evidence to establish the reasonable royalty rate that the parties would have negotiated post-2013.

Plaintiffs cite to the "Factual Background" of the Court's Partial Summary Judgment Order, which discusses the 2012 and 2017 blanket purchase agreements as well as ForeSee's GSA Schedule, in support of its argument that the Court has "established the casual link between ForeSee's unfair competition and CFI's economic injuries." ECF No. 159, PageID.32656 (quoting ECF No. 151, PageID.32533-32534). None of these documents, however, have any monetary value that could form the basis for a *damages* claim (which must meet a higher standard of proof). As explained in Defendants' Supplemental Briefing Regarding the Status of the Pending *Daubert* Motions ("Defendants' Brief") (ECF No. 160, PageID.32683-32684), the award of a blanket purchase agreement did not entitle ForeSee to *any* funds or *any* contracts. Defendants still had to compete with CFI and others to win contracts. *Id.* Similarly, a GSA Schedule is simply a mechanism that informs the government of a commercial

---

[4] Plaintiffs' summary judgment motions were expressly "partial"; damages issues were not addressed. ECF No. 68, PageID.3730; ACSI case, ECF No. 89, PageID.2725.

company's available products or services; it does not reflect or effect any sale.[5] As a result, CFI must prove (1) which specific contracts/call orders it alleges it lost out on because of a specific false statement or a specific act of unfair competition, (2) that the unfair competition/false advertising actually confused identified customers, (3) that CFI was harmed, or ForeSee benefited, as a result of the unfair competition/false advertising, and (4) the amount of Defendants' sales from any contract that satisfied these proofs. *Balance Dynamics*, 204 F.3d at 695 n.6; *Max Rack*, 2022 WL 2751685, at *13; 15 U.S.C. § 1117(a).

## III.   **RELEVANCE OF THE PARTIES' EXPERT OPINIONS**

### A.   **The Parties Agree That The Damages Experts (HKA and Haas) Are Relevant**

The parties agree that the respective damages experts remain relevant to the question of the proper measure of damages in these cases, and thus those motions to exclude need to be decided. To the extent it is admissible, Mr. Haas' report and testimony relates to damages and thus remains relevant. Likewise, the HKA Reports remain relevant as they directly address relevant damages issues and the remaining questions that will determine the proper measure of any such damages (e.g., entitlement to damages, apportionment, equitable factors, deductions). More specifically, the HKA

---

[5] *See* https://www.gsa.gov/buy-through-us/purchasing-programs/gsa-multiple-award-schedule/about-gsa-schedule (A GSA Schedule "provide[s] access to millions of commercial products and services at fair and reasonable prices to the government.") (last accessed August 1, 2022).

Reports address, *inter alia*, CFI's (and Mr. Haas') failure to offer any proof regarding which of the challenged statements or references to "ACSI" actually caused a particular contract to be obtained by ForeSee and/or that any such infringing conduct caused harm to CFI. *See, e.g.*, ECF No. 96-6 at 25-40. (This inquiry is also relevant to the equitable factors of diverted sales and delay.) The HKA Reports also address in detail the proper measure of damages, including addressing the issues of proper deductions, apportionment, and the equitable factors. *See, e.g., id.* at 41-44, Attachment 1A, 3A, 3.1.

Plaintiffs' Brief argues that "only CFI was eligible for the government contracts that were awarded to ForeSee on account of its misrepresentations." ECF No. 159, PageID.32655 (underline in original). This significantly oversimplifies the relevant question of which contracts (or call orders) CFI is entitled to seek disgorgement of ForeSee's profits on. CFI is required to present evidence on which government contracts it claims "were awarded to ForeSee on account of its misrepresentations." *Id.* While Mr. Haas' report identifies the contracts for which he added up the revenues, it is devoid of any analysis establishing that those contracts are properly included in the damages calculation. *See* ECF No. 64-2.[6] In contrast, the HKA Reports specifically rebut Mr. Haas' analysis and address the reasons the inclusion of certain contracts by

---

[6] Plaintiffs also ignore that the blanket purchase agreements did *not* require a particular methodology or algorithm, but rather, merely a method based on regression mathematics. ECF No. 86-10 (Ex. 110) at 5; ECF No. 83-16 (Ex. 57) at 8.

Mr. Haas were unsupported and in error. *See, e.g.,* ECF No. 96-6 at 37-39 (discussing how ForeSee obtained government agency contracts).

Plaintiffs erroneously argue that the Court found that "each contract awarded to ForeSee under these vehicles were the result of ForeSee's unfair competition," referencing the 2012 and 2017 blanket purchase agreements and ForeSee's GSA Schedule.[7] ECF No. 159, PageID.32656 (quoting ECF No. 151, PageID.32533-32534). But the Court made no such finding. At most, the Court's Order found that ForeSee was awarded the blanket purchase agreements because of its "use of the ACSI methodology." ECF No. 151, PageID.32534.[8] The Court did not find that *any* specific call order (let alone *every* call order) obtained by ForeSee under the blanket purchase agreements resulted from the infringing conduct. That is not surprising, because Plaintiffs did not move for summary judgment on damages, and this is purely a damages issue that requires a more stringent offer of proof than was required to demonstrate liability. *Max Rack,* 2022 WL 2751685, at *8; *Balance Dynamics,* 204 F.3d at 694.

As explained in Defendants' Supplemental Brief, the award of a blanket purchase agreement did <u>not</u> entitle ForeSee to *any* government contracts (just as it would not

---

[7] ForeSee's publicly available GSA Advantage Listing was updated in April 2018. ECF No. 85-18 (Ex. 98); ECF No. 85-20 (Ex. 100).

[8] The Court's Order appears to base this conclusion solely on the fact that ForeSee's 2012 bid for the blanket purchase agreement references ACSI methodology, while making no reference to the numerous other reasons provided by the Federal Consulting Group/Acquisition Services Directorate for awarding the 2012 blanket purchase agreement to ForeSee. ECF No. 83-9 (Ex. 49).

have entitled CFI to any government contracts had CFI been selected).[9] Instead, ForeSee and CFI (along with the numerous other customer satisfaction/experience companies) were free to compete for any government agency's business. It remains CFI's burden to demonstrate which of ForeSee's sales were the result of the unfair competition/false advertising and how specifically that harmed CFI. The Court's Order also states that ForeSee obtained certain contracts based on its GSA Schedule (ECF No. 151, Page ID.32533-32534), but the question of *which contracts were obtained* based on a false representation in ForeSee's GSA Schedule must be proven by CFI. In other words, being awarded a blanket purchase agreement does *not* translate into winning *any* contracts. CFI does not meet its burden by general references to the blanket purchase agreements or ForeSee's GSA Schedule. It remains CFI's burden to demonstrate which of the call orders it contends were obtained because of the unfair competition/false advertising, that the unfair competition/false advertising actually confused customers, and that CFI suffered harm as a result. *Balance Dynamics*, 204 F.3d at 691, 693, 695.

Plaintiffs' Brief rehashes arguments from its motion to exclude, arguing that certain topics in the HKA Report were not rebuttals of Mr. Haas' report. ECF No. 159, PageID.32666-32667. This argument still lacks merit. The HKA Reports specifically

---

[9] *See, e.g., McLeod Grp., LLC. v. United States*, 840 F. App'x 525, 527 (Fed. Cir. 2020); *Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382-83 (Fed. Cir. 2014); *Crewzers Fire Crew Transp., Inc. v. United States*, 98 Fed. Cl. 71, 79 (2011). By their very terms, the 2012 and 2017 blanket purchase agreements made clear that there was no obligation to place any orders with the contractor and did not obligate any funds. ECF No. 83-16 (Ex. 57) at 6; ECF No. 84-18 (Ex. 78) at 17.

address and analyze in detail Mr. Haas's opinions regarding the measure of damages. One such issue addressed in the HKA Reports is which contracts (if any) were the result of specific instances of offending conduct. As previously discussed, Plaintiffs incorrectly argue that the Court has decided this issue. ECF No. 159, PageID.32656.

Plaintiffs also incorrectly argue that the Court determined "that ForeSee had agreed to pay ACSI LLC $300,000/year for the right to use the ACSI Mark". ECF No. 159, PageID.32651, 32667 (quoting ACSI case, ECF No. 167, PageID.31133). Instead, the Court simply noted that, in April 2012, this was what ForeSee had paid for a license. Mere recitation of the terms of ForeSee's terminated license does not equate to the Court ruling on the reasonable royalty rate. In fact, Plaintiffs acknowledged this when they correctly stated that Mr. Haas and HKA's opinions on reasonable royalty are still relevant "because the partial summary judgment [on liability] in the ACSI Case did not resolve the amount of unpaid royalties owed to ACSI LLC." ECF No. 159, PageID.32666. Further, the Court did not address or consider (1) how the parties would have valued the license post-2013, (2) what a license for only the public sector would have been worth, (3) the effect of other similar licenses, or (4) the effect of the sale of the ACSI marks to ACSI LLC. All of these (and other) considerations are addressed by the HKA Report and are relevant to the question of the value of a license to the ACSI Designations for use in the public sector.

B.      Mr. Ezell Remains Relevant

Mr. Ezell conducted a standard recognition survey to determine the portion of ForeSee's potential customers that recognized the term "ACSI." ECF No. 93-2, ¶2. His survey revealed that essentially nobody[10] thought of "ACSI" when asked to name customer satisfaction measures or companies that measure customer satisfaction. ECF No. 93-2, ¶¶11-12. Notably, only 23.5% of respondents when prompted with "ACSI" recognized it. *Id.*, ¶13. In other words, over 75% of ForeSee's potential customers, even if they saw ACSI used in ForeSee materials or communications, would not know what it is. This demonstrates that the majority of ForeSee's potential customers would *not* associate ForeSee with ACSI LLC and would *not* know what ACSI methodology is, much less think it requires PLSPM as compared to GSCA. This evidence remains relevant to at least the reasonable royalty rate for a post-2013 license to the ACSI Designations and the value of ForeSee's sales that could be attributed to ForeSee's use of "ACSI."

Plaintiffs do not dispute that Mr. Ezell's survey, demonstrating the commercial weakness and lack of recognition of ACSI, is relevant to the price ForeSee and ACSI LLC would have theoretically negotiated for a trademark license–the reasonable royalty rate. Nor could they. *See adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *12 (D. Or. Sept. 12, 2008). Instead, Plaintiffs claim that the

---

[10] One survey respondent answered, "the American customer index," which may have been a reference to ACSI. ECF No. 93-2, ¶12.

Court has already determined the reasonable royalty rate based on a single quote from the Court stating the terms of the terminated license. ECF No. 159, PageID.32651 (ACSI case, ECF No. 167, PageID.31133). As previously discussed, Plaintiffs argument overstates the Court's factual finding, *see supra* Part III.A, and is contradicted by Plaintiffs' admission elsewhere that the rate is yet to be decided. ECF No. 159, PageID.32666. And although the 2012 sublicense between ACSI LLC and ForeSee is relevant, it was "negotiated" with Dr. Fornell sitting on both sides of the deal, as sole owner of ACSI LLC and the Chairman (and one of the largest owners) of ForeSee. The factfinder could determine that such a rate does not reflect the actual value of the ACSI designations that would be agreed upon through a true arms-length negotiation. Plaintiffs' argument likewise fails to recognize that ForeSee (with Dr. Fornell's approval as a ForeSee Board member) believed the cost of the license was not justified as ForeSee sought to enhance its own brand. As evidenced by the Ezell study, the term "ACSI" meant little to nothing to a large majority of ForeSee's customers. The 2012 sublicense can hardly be considered an arms-length deal and ACSI LLC has not provided evidence that the parties would have agreed (post-termination) to a royalty of $300,000/year even with Dr. Fornell as Chairman of ForeSee.[11] It is for the factfinder to decide what the parties would have agreed to in a theoretical negotiation. Mr. Ezell's testimony as to the

---

[11] The instant case differs from a typical "holdover licensee" damages analysis in several ways, including that ACSI LLC's chairman, Dr. Fornell, expressly approved of the license termination as a ForeSee Board member. ECF No. 82-3 (Ex. 23), ¶21.

weakness of "ACSI" among ForeSee's potential customers remains relevant to this determination.[12]

With respect to the CFI case, Mr. Ezell's survey also remains relevant to how to properly apportion any profits obtained by ForeSee. Plaintiffs ignore that even if CFI can meet its preliminary, heightened burden of causation required to obtain monetary damages, ForeSee then has the right to demonstrate that a portion of its profits are *not* attributable to the unfair competition/false advertising. *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942); *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991). CFI argues that ForeSee's use of "ACSI" caused ForeSee's customers to wrongly believe ForeSee was affiliated with ACSI LLC (ECF No. 117, PageID.20950) and/or to believe that ForeSee used PLSPM instead of GSCA (ECF No. 117, PageID.20951-20954). Mr. Ezell's survey demonstrates that, even after being prompted with the term "ACSI," 76.5% of ForeSee's potential customers do *not* recognize "ACSI." ECF No. 93-2, ¶13. Customers that do not recognize "ACSI" cannot associate it with ACSI LLC, nor could they think it meant ForeSee used PLSPM instead of GSCA. Therefore, ForeSee offers this evidence to support the conclusion

---

[12] Plaintiffs malign Mr. Ezell's survey as "speculative" and argue "there is no need for the Court to consider" it. At the outset, Mr. Ezell's survey is not speculative in any sense. Rather, it is a scientific consumer study following established survey methodology for determining the relevant public's recognition (which was remarkably little) of ACSI. But even then, determination of actual damages (i.e., reasonable royalty rate) is a job for the jury, and Plaintiffs' arguments go to the weight to be given to Mr. Ezell's opinions, something for the jury to decide.

that any profits from those 76.5% of customers who don't recognize "ACSI" could not be due to ForeSee's unfair competition and should not be awarded to CFI. Mr. Ezell's opinions remain relevant.

### C. Defendants Do Not Object To Plaintiffs' Withdrawal Of Mr. Wallace

Plaintiffs state that Mr. Wallace's opinions are no longer relevant as this Court has held that there is a likelihood of confusion. ECF No. 159, PageID.32664-32665. Although ForeSee disagrees (*see* ECF No. 160, PageID.32689-32690), ForeSee does not object to Plaintiffs' withdrawal of Mr. Wallace, which will render ForeSee's motion to exclude Mr. Wallace moot.[13]

### D. Dr. Leonard Remains Relevant

Dr. Leonard utilized established linguistic methodology to determine how the public has used (and continues to use) the term ACSI. ECF No. 94-8, PageID.13456. Based on his analysis of over 26,000 uses of ACSI, Dr. Leonard determined that ACSI has a generic or descriptive meaning when referring to the index or methodology, as opposed to ACSI LLC (the latter identifying source and functioning as a trademark). Plaintiffs mistakenly interpret Dr. Leonard's opinions as pertaining solely to whether the ACSI designations can function as trademarks, and therefore argue they are now irrelevant. Dr. Leonard's analysis and opinions, however, are broader than Plaintiffs'

---

[13] Even if Mr. Wallace were not withdrawn, his testimony should be excluded for the reasons set forth in Defendants' motion to exclude. *See* ECF No. 60.

interpretation – his analysis demonstrates that "ACSI," even when considered as a registered trademark, is an exceptionally weak mark that continues to have a non-trademark/generic meaning.[14] Dr. Leonard's opinions remain relevant to the determination of the reasonable royalty owed to ACSI LLC, apportioning of ForeSee's profits, and the relevant equitable considerations. 15 U.S.C. § 1117(a); *Laukus v. Rio Brands, Inc.,* 391 F. App'x 416, 424 (6th Cir. 2010).

Regarding the first point, the amount that ForeSee would have theoretically agreed to pay as a license fee (*i.e.*, a reasonable royalty rate) for use of ACSI would depend, in part, on its strength. *See adidas Am., Inc.*, 2008 WL 4279812 at *12. Dr. Leonard's findings and resulting opinion that ACSI still has a generic meaning that is in use, and that there are numerous other "CSI's" with geographical-name modifiers demonstrate the lack of strength. ECF No. 94-13, PageID.14492-14504. The only theoretical value of a license to the ACSI designations would be to communicate to customers that ForeSee is affiliated with ACSI LLC. But Dr. Leonard has demonstrated

---

[14] Plaintiffs continue to assert, wrongly, that the only issue is whether the term "ACSI" is generic. While Defendants continue to believe that ACSI is generic (as the given name of the methodology or index), that is not the current issue. The issue here is whether the term, even as a federally registered trademark, has, in addition to any alleged trademark status, a generic or descriptive meaning. Sixth Circuit recognizes this circumstance. *See Rupp v. Courier-J., Inc.* 839 F. App'x 1003, 1008 (6th Cir. 2021) (Although a registered trademark, "Derby Pie" was properly used generally to inform one of a type of pie – a chocolate walnut pie). Similarly here, ACSI, even though registered, is also properly used (generically) to inform one of a type of customer satisfaction index or methodology. Both the public and ForeSee should be permitted to use the term "ACSI" in that generic sense without fear of incurring damages.

that at least a portion of ForeSee's customers would see "ACSI" and think of the methodology/index (if it triggers anything), *not* of ACSI LLC. Therefore, Dr. Leonard's opinions are relevant to the determination of a reasonable royalty rate.

Dr. Leonard's opinion that ACSI has a non-trademark meaning is also relevant to which (if any) of ForeSee's profits CFI is entitled to. To determine liability the Court reviewed a limited number of documents that relate to a few select contracts. While the Court has held that those uses of "ACSI" in the limited number of reviewed documents are "trademark uses," CFI still must identify each contract it alleges it lost as the result of an improper trademark use of ACSI by ForeSee. The Court has neither seen nor ruled on all contracts in these cases. CFI may not have even competed for many of these contracts. And even if CFI is able to satisfy its burden, ForeSee has the opportunity to apportion damages and explain why the award of certain contracts were not attributable to any infringing conduct. *Balance Dynamics*, 204 F.3d at 695. CFI is only entitled to profits that are due to ForeSee's unfair competition/false advertising, and 15 U.S.C. § 1117(a) permits ForeSee to demonstrate which of the contracts at issue were awarded for reasons other than uses of ACSI or deceptive statements. Dr. Leonard's testimony explains how third parties can and do use "ACSI" in a generic, non-trademark way, which will aid the factfinder in analyzing the evidence (*e.g.*, any evidence of alleged actual confusion presented by CFI) and determining which contracts were (or were not) won as a result of trademark uses.

Dr. Leonard's opinion that ACSI was first adopted to mean, and originally meant the methodology/index, and that ACSI continues to have that meaning in some uses (ECF No. 94-13, PageID.14495-14504), is further relevant to the equities that must be considered in deciding the issue of disgorgement. ACSI methodology has been repeatedly published to the public. *See, e.g.,* ECF No. 81-1 (Ex. 1) (*Fornell, et al., "The American Customer Satisfaction Index: Nature Purpose and Findings"* (1996)). The public, including government agencies, have an interest in referring to ACSI methodology generically using the term by which the methodology has been known—"ACSI methodology"—without fear of a claim of trademark or unfair competition. Dr. Leonard's testimony is therefore relevant to the required weighing of equities. 15 U.S.C. § 1117(a); *Laukus,* 391 F. App'x at 424.

### E.   Dr. Benkí, Dr. Chin, And Dr. Steffey All Remain Relevant

Plaintiffs argue that all the technical experts are no longer relevant, given the Court's holding that ForeSee does not practice ACSI methodology. ECF No. 159, PageID.32659. But the validity of GSCA and comparability with PLSPM remains a key issue to these cases. From unique perspectives, Dr. Benkí, Dr. Chin, and Dr. Steffey opine that GSCA and PLSPM produce statistically identical scores. These opinions support a finding that Plaintiffs have suffered no reputational harm, that no customer bought ForeSee's services because they believed it used PLSPM instead of GSCA, and that customers received from ForeSee a service that was at least as good as (and in fact better in certain respects) than that provided using PLSPM.

Plaintiffs have broadly (without quantification) alleged reputational damages based on ForeSee's use of the allegedly "inferior" GSCA algorithm as being associated with Plaintiffs and/or "ACSI methodology." ForeSee's technical experts explain the lack of harm from any such alleged association because GSCA is not inferior. Dr. Steffey opined that GSCA and PLSPM produce statistically identical results, and that the academic literature indicates that GSCA is in fact better than PLSPM in certain respects. ECF No. 97-4 at 4-7. Dr. Benkí likewise confirms that GSCA produces results that are statistically identical to, or slightly better than, PLSPM. ECF No. 98-8 at 8-11. Dr. Chin further refutes Plaintiffs' reputational harm theory, opining, *inter alia*, that PLSPM's popularity does not indicate it is better than GSCA and that the two algorithms have effectively the same predictive power when using a minimum sample size of at least 250 respondents. ECF No. 92-4, PageID.12606-12609.[15]

If CFI can meet the heightened burden required to obtain monetary damages, then the opinions of the technical experts will also be relevant to the apportionment of profits. The Court held that ForeSee's statements that it uses ACSI methodology constitute false advertising, as ForeSee uses GSCA as its component-based structural equation modeling algorithm instead of PLSPM (a closely related component-based structural equation modeling algorithm). ECF No. 151, PageID.32538. As a plaintiff is only entitled to profits that are the result of the unfair competition/false advertising,

---

[15] ForeSee uses a minimum sample size of 300 respondents. ECF No. 98-8 at 12.

CFI is only entitled to ForeSee's profits that were gained because, for example, the customer believed ForeSee did not use GSCA, but instead used PLSPM. From different perspectives, Dr. Benkí, Dr. Chin, and Dr. Steffey all opine that GSCA produces statistically identical results to PLSPM. This expert testimony shows that it is unlikely that customers purchased ForeSee's services based on a misunderstanding of which of the two algorithms ForeSee used.

Plaintiffs also ignore that any disgorgement of ForeSee's profits is "subject to the principles of equity." 15 U.S.C. § 1117(a). One equitable consideration is whether ForeSee was palming off inferior services to government customers. *Laukus*, 391 F. App'x at 424. According to Dr. Benkí, Dr. Chin, and Dr. Steffey, the answer is a resounding no. Their expert testimony that GSCA performs equivalently to, if not slightly better than, PLSPM to estimate customer satisfaction "scores." *See, e.g.*, ECF No. 92-4, PageID.12612; ECF No. 97-4 at 1; ECF No. 98-8 at 12. Thus, the factfinder could conclude that ForeSee wasn't selling an inferior service – that ForeSee *improved* its services with the latest "state of the art" innovation in component-based structural equation modeling to provide better results to its customers. ECF No. 80-2 (Ex. 117); ECF No. 80-3 (Ex. 118) at 4. Thus, the technical experts' testimony remains relevant to the issue of disgorgement.

### F.     Plaintiffs Withdrawal Of Dr. Hair Does Not Affect The Relevance Of ForeSee's Technical Experts

ForeSee's technical experts also remain relevant even though Plaintiffs have stated that, based on the Court's rulings, they will not require testimony from Dr. Hair. ECF No. 159, PageID.32660. Plaintiffs elevate form over substance in erroneously trying to dismiss Dr. Benkí, Dr. Chin, and Dr. Steffey as solely "rebuttal" to Dr. Hair's testimony. *Id.* ForeSee's technical experts do not merely criticize Dr. Hair's opinions – they also offer opinions that remain directly relevant to damages issues. As explained above, their opinions on the comparability of GSCA and PLSPM are relevant to whether Plaintiffs suffered any reputational harm, and whether any customers would have chosen ForeSee based on the belief that ForeSee used PLSPM instead of GSCA. Additionally, to the extent Plaintiffs contend ForeSee should not have compared its scores estimated using a "state of the art" GSCA algorithm with prior scores estimated using a PLSPM algorithm,[16] Dr. Benkí, Dr. Chin, and Dr. Steffey offer relevant opinions explaining that such comparisons are appropriate because statistically identical results are obtained with both PLSPM and GSCA. Such opinions are both within the scope of Dr. Hair's report and go beyond merely rebutting Dr. Hair's opinions. These opinions remain relevant to damages issues regardless of the status of Dr. Hair as a testifying

---

[16] *See* ECF No. 69 at 8-9, 21.

expert.[17] Plaintiffs' withdrawal of their own expert should not prevent the jury from hearing the relevant testimony of ForeSee's technical experts.

## IV.   <u>CONCLUSION</u>

Plaintiffs state Mr. Wallace's opinions are no longer relevant. Thus, that motion to exclude is moot. As discussed herein, the remaining experts that are the subject of the pending motions to exclude remain relevant and Defendants stand ready to present oral argument as to each of those motions.

Respectfully submitted,        /s/ *Stephen M. Schaetzel*

Dated:  August 1, 2022        **BROOKS KUSHMAN P.C.**
Chanille Carswell (P53754)
Christopher C. Smith (P73936)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone:  (248) 358-4400
ccarswell@brookskushman.com
csmith@brookskushman.com

**MEUNIER CARLIN & CURFMAN LLC**
Stephen M. Schaetzel (GA Bar No. 628653)
Robert J. Leonard (GA Bar No. 303694)
Steven M. Philbin (GA Bar No. 516724)
999 Peachtree Street, Suite 1300
Atlanta, Georgia  30309
Telephone:  (404) 645-7700
sschaetzel@mcciplaw.com
rleonard@mcciplaw.com
sphilbin@mcciplaw.com

*Attorneys for Defendants*

---

[17] Even if Plaintiffs do not offer Dr. Hair as a witness, ForeSee may call him to testify as to the opinions he offered.

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that, on this 1st day of August 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

/s/ <i>Stephen M. Schaetzel</i>
Stephen M. Schaetzel
